No. 13,826.

STATE EX REL. JOSEPH CAILLOUET, JR., VS EMILE J. LAICHE, CLERK.

SYLLABUS.

Where a bill passes one house of the General Assembly, is transmitted to the other where it is amended, and it appears that the amendment was never reported to nor concurred in by the house wherein the bill originated, and there is an omission of the amendment from the act as approved and promulgated, it must be held the act was not constitutionally enacted and has not the force and effect of law.

APPEAL from the Twenty-Seventh Judicial District, Parish of St. James—*Leche, J.*

*Kernan & Lambremont* for Relator, Appellee.

*G. A.Gondran* for Respondent, Appellant.

The opinion of the court was delivered by

BLANCHARD, J. The question which this cause presents is whether or not Act No. 120 of the Legislative Acts of the year 1900 was constitutionally enacted into law; whether the act *as promulgated* passed both Houses of the General Assembly; and whether, therefore, the act is entitled to the force and effect of law.

The act in question bears the title:—

"An act to amend and re-enact Article 95 of the Revised Civil Code of Louisiana of 1870."

Article 95, prior to attempted re-enactment, read:—

"Among collateral relations marriage is prohibited between brother and sister, whether of the whole or of the half blood, whether legitimate or illegitimate, and also between the uncle and the niece, and the aunt and the nephew."

The attempted re-enactment presents it in this form:—

"Among collateral relations marriage is prohibited between brother and sister, whether of the whole or of the half blood, whether legitimate or illegitimate, between the uncle and the niece, the aunt and the nephew, and also between first cousins."

That which is new in the article as thus re-enacted is the prohibition of the marriage of *first cousins*.

In November 1900 the relator demanded of respondent clerk of the court the issuance to him of a license to marry a certain young lady of the Parish of St. James. He stated the young lady was his first cousin and that he was, with the consent of her parents, engaged to marry her.

The clerk declined to issue the license on the ground that the marriage of first cousins is prohibited by the law of Louisiana and pointed to Act 120 of 1900 as embodying such prohibition.

Whereupon the relator applied to the District Court for its writ of *mandamus* to compel the clerk to issue the license.

After due proceedings had a decree was entered making peremptory the writ and directing the clerk to issue the license.

This appeal followed.

The contention of the relator, which was sustained by the court

*a qua,* is that the act in question did not pass the two Houses of the General Assembly in such way as to meet the requirements of the Constitution, and, therefore, it is not a valid statute and has not the force of law.

More specifically stated, his contention is the bill, as it passed the House, contained the declaration that the act should take effect "from and after its promulgation;" that in the Senate the words "its promulgation" were stricken out and there were inserted in lieu thereof the words "the first of January 1902," so as to make the act take effect from and after the first of January 1902; that this amendment was never acted on by the House, was not incorporated in the bill as it finally passed the House, nor as it was signed by the Speaker of the House and the President of the Senate, nor as it was approved by the Governor, nor as it was promulgated; that, on the contrary, the words which made the act read it should take effect from and after its promulgation were retained through error in the bill when reported back from the Senate to the House with other Senate amendments not in question, and remained in the act throughout the subsequent proceedings had in reference to it up to and including promulgation; and that since the Senate passed the bill to take effect from and after the first of January 1902 and the House passed it to take effect from and after its promulgation, there was a failure of concurrence of the two Houses on the measure and the same was not, therefore, constitutionally enacted into a statute.

The bill was introduced into the House on the 7th of June 1900, and became House Bill No. 184. It passed the House finally on June 18th; was transmitted to and received by the Senate June 19th; was referred to the Senate Committee on the Judiciary June 20th; was reported back from that committee favorably with one amendment on July 3rd; and on the same day the amendmnet was adopted.

This amendment was:—

"Strike out the words 'its passage' in line 23 and insert in lieu thereof the words 'first of January 1902.' "

In the Journal of the Senate it is made to read "first of January 1900," but this is shown by the evidence to be a clerical error; that it was "1902" and not "1900."

After this amendment, making the act take effect from and after January 1st, 1902, was adopted by the Senate, the bill *as thus amended* was passed to its third reading.

The next day (July 4th) the bill was read in full and then, on motion, was returned to the calendar.

The following day (July 5th) it was again read in full and, on motion, was re-committed to the Committee on the Judiciary. It appears to have been considered the same day by the Committee, for its chairman, later in that day's session, reported it back to the Senate favorably with amendments, three in number.

Then on July 6th the bill was read by title, the amendments considered and adopted and the bill was again passed to its third reading.

These later amendments have naught to do with the present con·troversy save as to the last of the three which reads:—

"Amend amendment adopted July the 2nd (should be July 3rd) by striking out the word 'passage' and inserting in lieu thereof the word 'promulgation.'"

This meant that a mistake had been made in using the word "passage" instead of the word "promulgation" in the amendment which, as above stated, was adopted in the Senate on July 3rd.

The bill as it passed the House read to the effect that the act should take effect from its *promulgation*—not its *passage*. The Senate intended to amend this and did amend it so as to make it take effect from the 1st of January 1902; but whoever drew the amendment wrote "strike out the words 'its passage' and insert in lieu thereof the words 'first of January 1902,'" and in this form the amendment was adopted.

Later, it was found it was an error to use "passage" for that word was not in the bill at all, and that "promulgation" was the word intended. So, it became necessary to amend the amendment (or more properly speaking *the text,* for the adoption of the amendment had made it part of the text) by substituting the word "promulgation" for "passage." Accordingly, the Committee on the Judiciary, after the bill's recommittal, reported this as one of the amendments it recommended and the same was adopted.

The action of the Senate taken on July 6th left the bill, as to the time when it should go into effect, reading:—"first of January, 1902," instead of "after its promulgation."

The bill was next before the Senate on July 9th when it was read by title and put upon its final passage by aye and no vote and passed.

The next day it was reported to the House with Senate amendments. Two only are mentioned in the House Journal and neither relates to

Caillouet vs. Clerk.

the time when the bill was to go into effect. The House concurred in the amendments and passed the bill by aye and no vote. The day following it was enrolled, signed by the presiding officers of the two Houses, and approved by the Governor.

As thus passed and approved there was omitted from the act the Senate amendment making it go into effect January 1st, 1902, and there was retained in it the original House declaration that it should go into effect from and after its promulgation.

If the act as approved by the Governor and as subsequently promulgated had *contained* the Senate amendment as to the time when it should go into effect, it would matter not that the House Journal makes no specific mention of that amendment nor of its having been adopted by the House. It would have sufficed that the Journal showed generally the Senate amendments had been adopted, thus bringing the case within the rule of Hollingsworth vs. Tax Collector, 45 La. Ann, 222, viz:—that in such case the court will supply apparent omissions from legislative journals by presumptions of regularity of the proceedings of the General Assembly.

But here it indubitably appears that the Senate adopted an important amendment to the bill which was not reconsidered and taken out, which the House does not appear to have concurred in, and which was not incorporated in the bill as promulgated.

*Non constat* that the Senate would ever have given its assent to the measure in the shape in which it came from the House, and it conclusively appears that it did not pass it in that form.

There was no concurrence, therefore, of the two Houses in the act as promulgated, and it must be held the same was not enacted pursuant to the requirements of Arts. 39 and 40 of the Constitution. Hence, it is not a law of the State. Black's Const. Law, §§ 144, 145; Amoskeag Bank vs. Ottawa, 105 U. S. 667.

Judgment affirmed.

Provosty, J., takes no part, this case having been submitted prior to his taking his seat on the bench.