Martinez et als. vs. Bernhard.

No. 13,864.

JOSEPHINE MARTINEZ ET ALS. VS. MICHEL BERNHARD.

### SYLLABUS.

1.—The owner of a gentle animal which has always been of a kind temper, and has never attempted to bite anyone and has never given occasion to suspect that it would bite, is not liable in damages by the mere fact that the animal has bitten some one. Unless there be some fault, light as it may be, liability does not arise. In each, Montgomery vs. Kuerstner, 35 Ann. 1091; McGuire vs. Ringrose, 41 Ann. 1029; Delisle vs. Bouriaque, 105 La. p. 77, the owner was at fault. Laurent, Vol. 20, p. 675.

2.—A slight wound greatly aggravated by imprudent treatment will not give rise to liability for damages where both the attending physicians trace the death to another cause than the bite of the animal.

A PPEAL from Civil District Court, Parish of Orleans.—*Theard, J.*

*A. E. & O. S. Livaudais,* for Plaintiffs, Appellants.

*Hugh C. Cage* and *George C. Preot,* for Defendant, Appellee.

The opinion of the court was delivered by

BREAUX, J. Plaintiffs sue for damages. Charles Martinez, the father of plaintiffs, was, on the 8th day of July, 1899, bitten by a dog

belonging to Michel Bernhard, the defendant. On the seventeenth day of August following, Charles Martinez died.

Plaintiffs charge that defendant owned for his own use and pleasure a vicious and ferocious dog and allowed it to run at large, although defendant knew that he was vicious and ferocious; that while their father was passing on one of the public highways of the City of New Orleans, he was attacked by this vicious animal and several times bitten and maimed by him; that the accident was owing to the neglect of defendant in allowing this dog to range at large; that the venomous and virulent character of the wound inflicted upon the body of the father was the cause of his death.

The defendant, in his answer, controverts plaintiffs' averments, and denies that he is liable in damages. Plaintiffs' demand was rejected in the District Court and they prosecute this appeal from the judgment.

We have not found, after carefully reading the testimony, that the animal was vicious and dangerous. It was not of a savage and blood-thirsty breed, addicted to acts of cruelty such as have brought the pure bloodhound into ill-repute. It was, we are informed by the testimony, a rabbit-dog and had never before attempted to bite anyone. He was, at the time, in front of the store kept by the defendant.

A peaceable dog may rightfully be in front of the store of its owner. At any rate, an owner cannot well be charged with neglect if his dog, which has never been known to be otherwise than gentle and kind, finds its way to the sidewalk in front of his place of business. The owner, it is true, is liable for damages caused by his animal, but to render him liable, it is necessary to prove that he is in some way negligent, or that he did not prevent the injury where it was reasonably to be expected that he should have prevented it. Only the lightest fault, it is true, is sufficient to render the owner liable. Here the testimony has not fastened even the slightest blame upon the defendant. He was the owner of a domestic animal that was in front of his store, and, while there, bit the deceased. Upon this showing, plaintiffs are not entitled to a judgment.

The decisions of this court have always found that the owner was in some way at fault in cases in which damages were allowed. Montgomery vs. Koester, 35 Ann. 1901; McGuire vs. Ringrose, 41 Ann. 1029. In Delisle vs. Bourriaque, 105 La. 84, the court said that there is no responsibility when there is no fault.

*"La jurisprudence francaise est dans le meme sens. Il a ete juge par la cour de Paris que le proprietaire d'un animal ne saurait etre declare responsable du dommage lorsqu'il n'a commis aucune espece de negligence, et qu'il n'a pu ni prevoir ni empecher l'accident dommageable."* Laurent, Vol. 20, 675.

While the least act of negligence should be enough to hold one liable who owns a dog, yet it must appear that there was some negligence, however slight.

This brings us to the question as to whether the death of Mr. Martinez was the natural result of the injury inflicted by the dog.

The two physicians who examined the wound pronounced it slight. One of the physicians was called to see Mr. Martinez on the thirteenth day of July. He found, he said, "two or three little marks on his leg, apparently not much, and I gave him a simple little application. Two or three days afterwards I saw him and his leg was doing apparently nicely." This physician further says, "A few days afterward I noticed that he had erysipelas around the wound and down his leg. The erysipelas extended up and down his leg, invaded the wound and developed other wounds." We understand that the physicians concur in the statement that the bite of the dog was not the cause of the death.

Septicæmia, they testified, was the cause of death, and they did not trace the cause of the poisoned condition of the blood to the slight wound. It appears that the daughter of the deceased, one of the plaintiffs, obtained from the owner of the dog a small bunch of his hair and conceived the idea that it would soothe the wound and cause it to heal. She put this hair on the scratches inflicted by the dog, carrying out the old saw that the hair of the dog is an antidote for the bite. She, after having put on the hair, applied a piece of salt meat over the hair. The hair and the salt meat remained on the wound for about a week. At the end of which week, erysipelas developed itself. The application was removed and the physician sent for.

In answer to the question, "Doctor, what do you think of the advisability of putting dog hair on a wound?" the doctor said: "Very injurious and absolutely certain to carry germs and disease into the wound and produce any sort of trouble like lockjaw, erysipelas, or, in fact, many other diseases."

In answer to the question: "Did you connect the death of the patient with the dog bite, except remotely?" The witness said:

"No, sir; I did not. It was due directly to septicaemia," and we understand that this witness, who was the regular attending physician, did not charge the septicaemia to the wound which he said was slight. The other physician called, and who had consultation with the attending physician, stated that the wound was slight and testified, that unless a dog was kept perfectly clean and constantly washed, his hair would have asceptic tendency and the probable effect of placing the asceptic hair in a wound would be to cause septicæmia.

We have quoted at more than usual length from the testimony of these physicans, for we consider their testimony of importance in determining the issue. The medical testimony entirely fails to find in the bite of the animal the legal and proximate cause of the death. It was not the true *causa causans,* the efficient cause attaching responsibility on the defendant. It was shown that the original injury was aggravated by the imprudent treatment of the daughter, and that the wound was slight and would not have caused death if it had not been for the mistaken application made as before stated. These physicians have testified regarding the cause of death as a separate and independent cause. In other words, they, in substance, testified that if it had not been for the treatment just mentioned the man would not have died of the slight wounds received. In the presence of this uncontradicted testimony, there can be but one conclusion arrived at, and that is the defendant is not liable.

The court, therefore, orders, adjudges, and decrees, that the judgment appealed from be affirmed.