MYRL A. WARRICK, APPELLEE, v. WILLIAM I. FARLEY, APPELLANT.

FILED MARCH 13, 1914.   No. 17,523.

1. **Animals:** PERSONAL INJURIES: RIGHT OF RECOVERY. One who voluntarily exposes himself to danger by attempting to separate two fighting dogs, then engaged in a combat, cannot recover damages from the owner of the dog by which he is bitten, because he has himself helped to create the condition and the danger.

2. ———: ———: ———. Where a dog is allowed to run at large, and bites the owner of another dog with which he is in a fight, and the owner is bitten while negligently attempting to separate the fighting dogs, there is no liability for damages because of the injury, unless the evidence shows that the owner of the dog which committed the injury knew that his dog was accustomed to bite persons, and then the injury must not be carelessly brought about or contributed to by the plaintiff, and, if it is, the plaintiff cannot recover.

APPEAL from the district court for Hamilton county: GEORGE F. CORCORAN, JUDGE. *Reversed.*

*Hainer, Craft & Aylsworth* and *John A. Whitmore,* for appellant.

*J. H. Grosvenor* and *W. A. Prince, contra.*

HAMER, J.

The plaintiff, Myrl A. Warrick, recovered a judgment against the defendant, William I. Farley, in the district court for Hamilton county, for damages by reason of an injury sustained through the bite of defendant's dog. The defendant appeals.

The defendant objects that the verdict is not sustained by sufficient evidence. This involves a consideration of the disposition of the dog, whether to bite mankind, and whether the defendant knew or had reason to believe that his dog had such a disposition. We have read the evidence. It appears that the defendant owned a bulldog. The plaintiff owned a coach dog. The plaintiff seems to

have been standing on the sidewalk in front of a drug store in the city of Aurora, and was talking with a gentleman named Elmore. He had with him his coach dog. The daughter of the defendant came along, and the defendant's bulldog was with her. The defendant's dog seems to have attacked the plaintiff's dog, and the plaintiff separated the dogs and put his dog in the drug store. Shortly afterwards the defendant's daughter returned, and she was accompanied by the defendant's dog. Immediately there was a resumption of hostilities between the two dogs. In trying to separate the dogs the plaintiff was severely bitten by the defendant's dog. The defendant set up the defense that his dog was gentle, and that he himself had no knowledge of the fact that he was inclined to bite any person. He also claimed that the dog was accustomed to play with his own children and the children of the neighborhood; that he was of a gentle disposition; and there is much testimony tending to show that fact, although it is not claimed that he did not fight other dogs. He would perhaps have been an unnatural bulldog if he had not had some fights with other dogs. It is also claimed that the plaintiff was negligent in the manner in which he handled the dogs when he undertook to separate them, and that his injury occurred because of such negligence in handling and attempting to separate two infuriated, fighting dogs then in a fight.

It is to be considered (1) whether the defendant's dog had a propensity to bite mankind; and (2) whether the defendant had notice of such propensity.

John Powell, chief of police, knew the defendant's dog, and had seen him on the streets with the Farley children, Alice and John. He gave his opinion that he did not think that the dog was a very bad dog. Robert Mitchel, the night watch, testified that he had not noticed anything wrong with the dog in its conduct toward persons. Mrs. Steenburg testified that she saw the dog every day; that the dog played with the Farley children, with Blanche McKey, Thomas Peterson, with the Williamson children, the Haughey girls, Arthur Ronin, and her own boys. She

saw the boys pick the dog up by his feet and handle him in a very rough manner, and he did not get angry at this. He seems to have been willing to endure almost any amount of rough treatment at the hands of these children. Mrs. Haughey, the wife of Dr. Haughey, testified that she knew the Farley dog; she saw him; and that her children played with the dog, especially the youngest girl, who was about 12 years old; she also saw the Williamson children, Thomas Peterson, and Dr. Steenburg's boys playing with the dog. They would run and hide, and the dog would hunt them. Mrs. Williamson testified as to the gentleness of the dog and its daily companionship with the children. Her children were seven, nine and eleven years old. She knew that the dog was always gentle with these children. Walter Boyd testified that the dog was with his brother-in-law's little boy, a little fellow three years of age, and that the dog and the child would play in the house. Mr. Ronin testified that the dog was the companion of his little grandson and other neighborhood little children. He had seen the dog on his porch and in his yard playing with his little grandson and other little children. The grandson was seven years old. George Verbeck testified that he had observed the Farley children and other children playing with this dog; that he had seen him a great many times with other children than the Farley children. The children and the dog would chase each other about the place. He never saw the dog show his teeth, growl, or show any tendency to bite anybody. He appears to have been the pet and companion of the children of the neighborhood.

The defendant's daughter testified that she had seen many children, ranging in age from four to twelve years, play with the dog; that they would tie a rope on his collar, and the dog would pull them on roller skates in front of the house; sometimes they would roll over him; at other times they would tie a handkerchief around his nose and watch him get it off with his paw. They also fed him candy. The defendant's wife testified to the same facts. The defendant's testimony is along the same line. He had seen

the children tie his feet together with a handkerchief or
a string. He had seen them tie a handkerchief about the
dog's nose. Mr. Serf testified that he frequently saw the
dog, and that when he went by the house the dog would
come out in a friendly way. He frequently went by the
Farley home and often in the nighttime. The dog was al-
ways friendly. He would come out and walk a little ways
with the witness. Lewis G. Bald testified that the dog
was unusually friendly. He testified to meeting the dog
and petting him, and that the dog went with him. He
often saw the dog play with the children. R. Y. Barnes,
who had formerly been the city marshal, testified that
for two years he had passed the Farley residence as of-
ten as at least twice a day, and sometimes four times a
day, and that he always found the dog playful and friend-
ly. He described the dog as a very pretty dog, and clean
and nice, and he would speak to him and pet him. He
had never seen any tendency on the part of the dog to
attack any person.

The evidence shows conclusively that the dog was gen-
erally of an amiable disposition, and that he played with
the children in the neighborhood. The evidence would
seem to indicate that there was no reason to apprehend
danger from this dog under ordinary circumstances. That
he would fight dogs was, perhaps, natural for a bulldog—
perhaps for most breeds of dogs.

W. J. Elmore, a witness for the plaintiff, testified that
Mr. Warrick separated the dogs when the defendant's
dog first came by, and put his coach dog in the drug store;
that the defendant's dog went on down the street; that
there was a little girl with the dog. Presently the little
girl came back. By that time the coach dog was out of the
drug store, and the bulldog came by. "Q. You say the
bulldog rushed in and grabbed the coach dog. What, if
anything, did Mr. Warrick do—describe what he did? A.
He grabbed these dogs and tried to part them, and he
had them by the collar, and this dog reached around and
grabbed him. * * * Q. As soon as they commenced
to fight that time (the second time) Mr. Warrick grabbed

both of them by the collar? A. Yes, sir. Q. And lifted them off their front feet? A. Well, he lifted them off their front feet, but they was still on their back. Q. And he was holding the dogs apart? A. Yes. Q. And they were both trying to get together? A. Well, Mr. Warrick's dog didn't attempt to get to the other one; the bulldog was doing all the lunging. Q. The other dog did not try to fight at all? A. He tried, but he was not vicious like the other dog."

Glenn Mason, witness on the part of the defendant, testified: "A. Well, I was in front of McKee & Hartquest's drug store, and with a bunch of men there after we got back from a trip in the automobile, and I heard somebody say, 'Here he comes,' and about the same time they said that the dogs were close together, and Mr. Warrick *grabbed them by the collar and picked them up.* * * * He lifted them *clear up,* and they were too heavy to hold that way, and they would strike the ground again, and then he *would pull them back up;* and it seemed he couldn't lift them the second time as high as he did the first time— (continuing). Well, they came back down to the ground, and the dogs—I don't know whether it was the *second* or *third* time—one of the dogs, Mr. Farley's dog, got hold of Mr. Warrick's dog on the side and just pulled the skin right out on the dog and let loose, he got loose from him again."

Luther French, a witness for the plaintiff, testified: "Mr. Warrick stepped out of the way, and Mr. Farley's dog had hold of Mr. Warrick's dog about the shoulders or neck; and Mr. Warrick grabbed his dog by the collar, and also Mr. Farley's dog, and he was pulling on Mr. Warrick's dog to get him off I believe—they was trying to get the dogs parted there anyway—and the first thing I knew the bulldog had bit Mr. Warrick."

It is, seemingly, the undisputed evidence that the plaintiff took *each dog* by the collar and *lifted them both clear of the ground.* Holding them in that manner, they would be sure to snap at each other. From the circumstances as detailed no one may be certain that the bite which the

plaintiff received was not intended for the coach dog. We are of the opinion that the plaintiff was guilty of negligence, and that he himself, by his negligence, made the injury possible. If he had taken either dog by the collar and attempted to drag him away from the other, he would, in all probability, not have been injured. We do not think that the evidence sustains the verdict.

It appears that the plaintiff was bitten because he caught these dogs by their respective collars and held them up so that they could snap at each other. As well expect two cats suspended together by their tails and facing each other not to fight as to expect peace between these dogs when they were held up fronting each other and with their heads near enough together so that they could snap at and reach each other. Elmore testified that the dogs were about the same size. A coach dog will fight, probably not so well as a bulldog; but, if this coach dog understood that his *master was helping* him by holding the other dog, he would try to do his whole duty, from a dog's standpoint, because of the spirit of loyalty to his master. A bulldog held up that way would probably delight in the mad revelry of the battle; and, no doubt, almost any dog would fight under the same circumstances. Ordinary prudence demands more careful conduct of the plaintiff and greater regard for his own safety. The injury of the plaintiff was clearly due to his own neglect.

The owner of a dog is not liable for injury caused by it, unless it is vicious, and notice of the fact that it is vicious is brought home to him. *Trumble v. Happy,* 114 Ia. 624.

The owner of ordinary domestic animals is not liable for injury which they do to another, unless the animal was accustomed to injuring persons, or had an inclination to do so to the knowledge of the owner. *Smith v. Causey,* 22 Ala. 568; *Le Forest v. Tolman,* 117 Mass. 109.

Where, in an action to recover for personal injury, caused by a domestic animal, it does not appear that the animal ever injured any one before or since, or that any one ever had any difficulty with it other than on which

plaintiff founds his suit, nonsuit should be granted, since there is no evidence that defendant had knowledge of the vicious character of the animal.  2 Cyc. 390.

Under a declaration that the defendant kept a dog that he knew was accustomed to bite mankind, it is not enough for the plaintiff to prove that the dog had a savage and ferocious disposition, and that defendant knew it; but he is bound to prove the allegation that the dog was accustomed to attack and bite mankind, and that defendant knew that.

There is no doubt that, in case of animals not inclined to do mischief, a previous mischievous propensity must be shown, and, the scienter clearly established, the gist of the action is not the keeping of the animal, but the keeping with knowledge of the mischievous propensity, whether proceeding from a savage disposition or not. *Mann v. Weiand,* 81 (pt. 2) Pa. St. 243; In *Beck v. Dyson,* 4 Camp. (Eng.) 198, Lord Ellenborough directed a nonsuit because the evidence was not sufficient to warrant the jury in inferring that the defendant knew that the dog was accustomed to bite.   In a like case Lord Abinger nonsuited because it did not appear that the owner had knowledge of the vicious propensity of his dog. *Hogan v. Sharpe,* 7 Car. & P. (Eng.) *755.   In *Martinez v. Bernhard,* 106 La. 368, 55 L. R. A. 671, it is said by the court:   "The owner of a gentle animal, which has always been of a kind temper, and has never attempted to bite any one, and has never given occasion to suspect that it would bite, is not liable in damages by the mere fact that the animal has bitten some one."

Where a dog has been around the premises for four years and had never shown symptons of viciousness, and he bit the plaintiff, and it was shown that he had just been stepped on, and that boys had been throwing dirt at him, held, that the vicious character of the dog was not shown so as to warrant a verdict against the owner. *Cuney v. Campbell,* 76 Minn. 59.

The plaintiff's contributory negligence in teasing defendant's dog, but for which the injury would not have

occurred, is a defense to the action, it matters not when or where the injury was inflicted. *Bush v. Wathen,* 104 Ky. 548, 47 S. W. 599.

In *Hathaway v. Tinkham,* 148 Mass. 85, it was said by Mr. Justice Allen: "It is, however, essential to a plaintiff's right to recover that he should have been in the exercise of ordinary care himself." Where the plaintiff interferes with a dog and is bitten, due care should be shown. The same should be true where he interferes with two dogs that are fighting. *Raymond v. Hodgson,* 161 Mass. 184. In the case cited, "the plaintiff testified that his dog was making great outcries; that he rushed up to the dogs, looked for a collar on the defendant's dog, and seeing none, seized the defendant's dog by the tail, and pulled it away from his dog; and that, as the dogs became separated, the defendant's dog bit his hand, which had hold of the tail." The plaintiff requested the judge to rule that he was not obliged to satisfy the jury that he exercised due care, under the undisputed circumstances of the case. The judge refused so to rule. The jury returned a verdict for the defendants, "on the ground of want of due care on the part of the plaintiff; and the case comes before us on the plaintiff's exceptions to the refusal to rule as requested." The supreme court of Massachusetts, by Judge Lathrop, delivering its opinion, cited several Massachusetts cases, and then said, referring to these cases: "We have no doubt that where the plaintiff incites or interferes with a dog, and is bitten, his due care must be shown; and that the same is true where he interferes with two dogs that are fighting. * * * In the case at bar, the plaintiff voluntarily submitted himself to danger, and we have no doubt that the ruling of the court below was right."

The logic of the Massachusetts case seems to be conclusive. Applying that logic to the instant case, it is clear that the plaintiff voluntarily submitted himself to danger and did not exercise due care. He held these dogs, that were then engaged in fighting, up in front of him. They were standing on their hind legs and snapping at each

other, and he was supporting them by holding them up. By his conduct he voluntarily incurred the danger. He failed to exercise reasonable discretion. He was guilty of contributory negligence. While the purpose of the plaintiff was a proper one—he was trying to stop the fight —he took no consideration of his own danger. He unnecessarily exposed himself.

The judgment of the district court is

REVERSED.

ROSE and SEDGWICK, JJ., not sitting.

FAWCETT, J., concurring.

I concur in the the judgment of reversal on the ground of the insufficiency of the evidence to show any previous disposition of defendant's dog to bite mankind; and on the further ground that plaintiff was guilty of negligence in voluntarily exposing himself to a danger that was clearly apparent.