No. 9751
Orleans

MARY ALICE GILLESPIE v. MR. AND MRS. GEORGE P. BLAISE, Appellants

(November 2, 1925, Opinion and Decree)

*(Syllabus by the Court)*

1. **Louisiana Digest—Animals—Par. 15.**
The owner of a gentle dog which has always been of a kind temper and has never attempted to bite anyone and has never given occasion to suspect that it would bite, is not liable in damages by the mere fact that the animal has bitten someone.

2. **Louisiana Digest—Animals—Par. 18.**
The owner of a domestic animal is not liable for any injury committed by it when he shows affirmatively that the animal was not previously vicious and that he had no knowledge that it was vicious.

(Civil Code, Art. 2321. Editor's note.)

Appeal from Civil District Court, Division "E". Hon. M. H. Byrnes, Judge.

This is a damage suit against the owner of a dog who bit the plaintiff.

There was judgment for plaintiff and defendant appealed.

Judgment reversed.

Prentice E. Edrington, of New Orleans, attorney for plaintiff, appellee.

Louis L. Rosen, Chas. Rosen, of New Orleans, attorneys for defendants, appellants.

CLAIBORNE, J. This is a damage suit against the owners of a dog who bit the plaintiff.

The plaintiff alleges that she called upon a person living on Pine street for the purpose of soliciting aid for her church; that while standing upon the porch of said house waiting for the bell to be answered a large Spitz dog, the property of defendants, escaped from their yard and rushed upon the porch upon which plaintiff was standing, attacked her and bit her upon the calf of the leg, inflicting a painful wound and causing her much fright and confining her to her bed for several days; that Spitz dogs are notoriously vicious; that the defendants' dog had snapped, attacked, and bitten several other persons prior to that date and that the defendants knew of that fact.

Plaintiff claims $1000 damages.

The defendants denied all the allegations of plaintiff's petition. Defendants averred that "the said dog is not vicious, but, on the contrary, is a domestic pet and is gentle, docile, kind and friendly, and has never bitten or snapped at anyone to the knowledge of defendants". They also pleaded that the plaintiff provoked the dog.

There was judgment for plaintiff for $200.00 based on a written opinion.

The defendants have appealed.

The case turns upon the interpretation of Article 2321 (2301) of the Civil Code, which reads as follows:

"The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day he may discharge himself from this responsibility by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done without being allowed to make the abandonment."

This Article is taken from Article 1385 of the Code Napoleon, which reads as follows:

"The owner of an animal, or the one using it, while he is using it, is responsible for the damage caused by the animal, whether the animal was under his care or whether it had strayed or escaped."

The leading case upon the subject is Martinez vs. Bernhard, 106 La. 368, 30 South. 901.

The syllabus, written in those days by the organ of the court, reads as follows:

"The owner of a gentle animal which has always been of a kind temper, and has never attempted to bite anyone, and never given occasion to suspect that it would bite, is not liable in damages by the mere fact that the animal has bitten someone."

This decision was followed by this court in Ladrix vs. Magio, 8 Orl. App. 167, where the jurisprudence of this state on this question was reviewed.

The Martinez case was cited in Bentz vs. Page, 115 La. 560, 39 South. 599.

Where a stallkeeper was kicked by a mule the defendant was held blameless.

The court said:

"In either event it is not shown that the defendant or the foreman had reason to believe that the mule which injured plaintiff was a vicious mule, or that there was any danger to the person who fed it."

Rabbach vs. Pelican Ice Co., 141 La. 952, 76 South. 160.

The rule announced in the Martinez case is the same at common law.

1 Ruling Case Law p. 1089, S. 33:

"The owner of an animal not naturally vicious is not answerable for an injury done by it when in a place where it has a right to be, unless it was in fact and to his knowledge vicious."

3 C. J. 89, S. 318:

"But the owner of a domestic animal is not liable, in the absence of a statutory provision, unless it is affirmatively shown either (1) that the animal was vicious and that the owner or keeper had knowledge of the fact also." S. 329.

"At common law the owner of a dog is not liable for injuries caused by it unless it is vicious and notice of that fact is brought home to him." P. id. p. 97, S. 330.

"If a man keeps a dog or other brute animal used to do mischief, as by worrying sheep, or the like, the owner must answer for the consequences if he knows of such evil habit." Note 13: "But the owner is not answerable for the first mischief done by a dog, a bull, or other tame animal." 2 Blackstone, p. 124, S. 153.

"The owner of a domestic animal is not, in general, liable for an injury committed by such animal unless it be shown that he had notice of its vicious propensity." 2 Kent. Marginal p. 348 note. Cooley on Torts, p. 342. Addison on Torts, p. 22, 185 —1 Labat, Master and Servant, S. 206— 2 Sedgwick on Damages, p. 581, Marginal, p. 570. Shearman and Redfield, p. 218, S. 188. 1 Thompson, p. 52, Wharton, S. 917.

In Spring vs. Edgar, 99 U. S. 645, the court said:

"Damage may be done by a domestic animal kept for use or convenience, but the rule is that the owner is not liable to an action on the ground of negligence without proof that he knew that the animal was accustomed to do mischief. * * * Domestic animals, such as oxen or horses, may injure the person or property of another, but courts of justice invariably hold that if they are rightfully in the place where the injury is inflicted, the owner of the animals is not liable for such an injury, unless he knew that the animal was accustomed to be vicious, and in suits for such injuries such knowledge must be alleged and proved, as the cause of action arises from the keeping of the animal after the knowledge of its vicious propensity." Authorities: Spring vs. Edgar, 99 U. S. 645 (654).

In every case in our reports where the owner of an animal was held liable there was evidence that the animal was known by the owner to be dangerous or had injured someone at some prior time. DeLisle vs. Bourriague, 105 La. 84, 29 South. 731; Montgomery vs. Koester, 35 La. Ann. 1091; McGuire vs. Ringrose, 41 La. Ann. 1029, 6 South. 894; Bentz vs. Page, 115 La. 56, 39 South. 599; Serio vs. American Brewing Co., 141 La. 290, 74 South. 998.

In Bentz vs. Page 115 La. 560, 39 South. 599, and Serio vs. American Brewing Co., 141 La. 298, 74 South. 998, the court said:

"In order to bring this case within the ruling of Martinez vs. Bernhard, 106 La-

368, 30 South. 901, it was necessary for defendant to show that the animal had always been of a kind temperament, had never attempted to bite anyone, and had never given occasion to suspect that he would bite."

Therefore, if the defendant made such proof plaintiff's suit against her must be dismissed.

Mrs. Blaise testified that she had owned that dog for four or five years and had kept him all that time in her house; it was given to her by Miss Mildred O'Conner; she kept the dog in the back yard if she went out, or in the house when she was home, because it was her pet; but never kept it under lock and key; a gate separates the back yard from the front yard; her dog never bit anybody nor showed any disposition to bite anybody to her knowledge; she does not keep the dog as a watch dog but as a pet.

George P. Blaise testified:

"This dog never displayed vicious propensities to his knowledge; never saw it snap at anybody or bite anybody; the children in the neighborhood play with him; the dog never bit any of the children that he knows of; they keep the dog around when visitors come to the house; the dog never snapped at them, on the contrary he wants to make friends; he is a friendly dog.

"Mrs. Fruch is his sister-in-law; she lives in the adjoining half of the double house he lives in; there was no partition in the back and the dog would go there; when they went out of town Mrs. Fruch kept the dog for them; she knows as much about the dog as Mrs. Blaise does."

Mrs. A. B. Fruch testified that she kept the defendants' dog many times when they went out; she never did tell Mr. Edrington that she was almost tickled to death when her sister-in-law (Mrs. Blaise) came home in order to relieve her of the work of keeping the dog; she never spoke to him; the dog was a regular pet; she kept him in the house; he was harmless and never did anything; she has known the dog since it was a baby, since Mrs. Blaise had it; never saw the dog bite anybody or snap at anybody nor display any vicious tendencies.

Miss Mildred O'Conner testified that the dog had been given to her; she had it for about four months, and then she gave it to Mrs. Blaise; the whole time she had it it was very nice and never snapped or anything like that; very good disposition; you could play with it and children could and never annoyed anybody coming in the house, even strangers; it was a month old when she got it; she did not give the dog because it was bad, she gave it because she was going away; she is positive the dog was not bad; he barked as all dogs do, but never snapped.

Mrs. Robert Sullivan lives next door to Mrs. Blaise; she has four children; she has a little boy two and a half years old who crosses over and plays with Mickey the dog; last Wednesday, the baby was missing and she went out in the back yard, looked over the fence, and there was Maurice John on Mickey's back; she has other children who play with it and pet it, and she pets it herself; he never snaps or bites at her or at the children; the children are not afraid of it, they play with it; never saw it snap at anybody; she first saw the dog the day she moved into her house; it was on the porch and she stood there until Mrs. Blaise came and she petted it; she sees the dog very often; she has been on the porch with him time and again alone; it has never snapped; she is from Chicago; moved to New Orleans in October.

Mrs. A. L. Bauers, sworn, said: She lives next door from the house formerly occupied by Mrs. Blaise; she has two children; she knows the dog, Mickey; he is a very friendly dog; I don't like dogs myself, and yet any time I sit down he will put his head on my knee and want

his head scratched; the children have always played up and down with it and it never touched them; the children play right up and down the street; he never snapped or bit that she ever saw. "I don't think Mickey would ever bite anybody. We take him riding in our automobile; he jumps from one side to the other with the children, in the front and back seats, and never tried to bite anybody, and I don't think he would." Mrs. Blaise's dog is a pet dog; she never saw the dog snap or bite at anybody; in her yard a dozen children played and Mickey would be with them and never snapped at any of them.

John J. Ramp is a plumber; he did some work for the defendant at her house; the dog was there; he went there four times; the dog neither barked nor snapped at him nor bit him; he worked alone in the room with the dog; when he first went there the dog was in the yard and it did not trouble him.

Sigsbee Bagnerise swears; he is a chauffeur for George P. Blaise:

"I have not known him to bite anyone. I took him several times home and he played with both my kids, one of them about two years and eight months, and he was blowing a horn at him and my little girl had candy in her hand and he was sitting in the chair, the dog was, and when I got ready to go I wanted her to get away from the dog, and she pulled two hands of hair out of him, and that's all he did. I called him in the car and he came along; never saw him snap at anybody or bite; the dog is about 18 inches high."

Silas Castine is a gardener for Mr. Blaise; the dog never barked or snapped at anyone or bit anyone; he acts in a friendly way towards strangers.

Cornelius Castine is a son of Silas Castine; he is also employed by the defendants as a gardener. J. B. Spearce works at defendant's garage. Both testify that they never knew the dog to bark or snap at anyone or to bite; it is loose in the yard.

It was admitted by counsel for plaintiff that if a witness for the defendant, named Dr. Young, were to be sworn and testify in the case, he would testify to the following facts:

"That he is a partner of Dr. Ford and has been a veterinarian for many years; that he had occasion in 1923 and also in 1924 to clip the Blaise dog, without the necessity of muzzling him on either time, which is unusual, as most dogs are afraid to be clipped and have to be muzzled; that Spitz dogs are generaly not vicious dogs, but are gentle household pets."

In order to contradict these witnesses and to prove the vicious character of the dog, the defendants called two colored boys as witnesses; one, Clarence Lewis, a delivery clerk for a grocery store. He testified that Mrs. Blaise had requested him to deliver at her front door and not in the back yard "because the dog was in the back yard".

The other, Joseph E. Clark, another delivery clerk.

He testified that the defendant told him "not to go to the back on account he (the dog) might bite me". Mrs. Blaise denies that she warned them not to pass through the back gate on account of the dog. But if she did, it was only a reasonable precaution, and nothing that indicated that dog would bite.

She says that she did not want these boys to pass by the gate and through the yard, as she had missed small articles, such as hatchets, hammers, and sprinklers.

We do not think the testimony of these two witnesses overcome defendant's testimony.

Plaintiff also examined two experts on dogs. It is for the court to determine the weight of expert testimony. 99 U. S. 646.

R. C. Duncan testified that a Spitz or Eskimo dog is "ugly, unreliable, and

usually vicious" as a general disposition; they will bite; they have trouble in getting them out of their stalls if the owner is not there; he would class them as pets in the house, but nowhere else; if they get out into the street they are liable to bite or be vicious; the Spitz dogs are a fad; they are used exclusively as pets; a good many people have them as such in this city; he never saw the defendant's dog; the most vicious of all dogs is the Shepherd, then the Chow or China dog, and last the Spitz; never saw a Spitz dog bite outside of a show; once in a while you will get a vicious airedale; poodles are vicious; a fox terrier will sometimes bite; the English bull dog, that is a mistaken idea, he is an unusually gentle dog; the bull terrier will bite; the pet bull terrier or the bull terrier will often bite.

Silas A. Oviatt, superintendent of dog shows, testified that he got rid of his Spitz dogs because they were troublesome; barked at night; afraid to trust the dogs; could not tell at what time they would bite; his own dogs twice snapped at his relations or family; at times they are docile, at other times snappish and vicious; same as poodles and one or two other dogs; an uneven disposition; the most troublesome dogs at shows are the German police, bulldogs, pet bulls, poodles, chows and Eskimo spitz; a spitz dog should be kept in the house or in the yard; all dogs should be kept inside of the premises; the spitz dog is practically used only as a house pet; all the above named dogs are ninety per cent vicious; all dogs should be kept inside of the yard when not accompanied by their owner.

What these experts say of the spitz may be asserted of the bulldog and of every other dog, that is that dogs of every breed are liable to bite. But because every dog may, as an exception, bite under given conditions, it does not follow that it is negligence or a fault to own a dog, otherwise no one could own a dog without exposing himself to damages. This court has decided that "the mere fact that they were bulldogs, or bull terriers, about a year old and fifteen inches or so in height, does not of itself and alone suffice to show that they were vicious or dangerous, at least there is no evidence that such is the case, and we do not know it of ourselves." 8 Ct. App. 172.

Some dogs only are vicious.

Plaintiff must prove that the defendant's dog to her knowledge was vicious in order to charge her with negligence, or defendant may prove that her dog was not vicious or that she did not know that it was vicious, and thus absolve herself from liability.

The witness Ramp testifies:

"I have gone in several houses where spitz dogs were when I was working on the milk wagon, and they never troubled me, plenty places. The only one tackled me was the shepherd."

It is therefore ordered that the judgment appealed from be reversed and annulled and that there be judgment in favor of the defendants rejecting plaintiff's demand at her cost.