No. 354

First Circuit

MANUEL AND WIFE v. YOUNG

(December 4, 1928. Opinion and Decree.)
(February 13, 1929. Rehearing Refused.)

(*Syllabus*)

O. E. Guillory, of Ville Platte, attorney for plaintiffs, appellants.

J. Hugo Dore, of Ville Platte, attorney for defendant, appellee.

ELLIOTT, J. Lance Manuel, minor son of Mayence Manuel and wife, was bitten by a dog belonging to Lucius Young. Mr. and Mrs. Manuel, father and mother of the minor, claim of said Young $700.00 in damages on said account. They allege that their son was bitten at a school which he was attending, and that the dog was reported to have been infected at the time with rabies. That their son and themselves, greatly alarmed as a result of the report about the condition of the dog, consulted a physician on account of the occurrence, and had their son undergo the Pasteur treatment. They further allege on information and belief, that said Young had been informed before the occurrence that his dog was apparently mad, and was notified to keep it away from the school. That said notice was not being heeded by said Young.

The amount claimed is made up of the charge of the physician for the Pasteur treatment, trips which the father and mother made with horse and buggy taking their son to the doctor, loss of services of their son, charge for their work and care in nursing their son, claim for their son on account of his mental suffering and anguish due to his fear that he had been infected with rabies, physical suffering as a result of the Pasteur treatment, and because of the effect of said treatment on his nervous system.

The defendant denies that their son was bitten by his dog, and further denies that his dog was infected with rabies. He also alleges that his dog was a kind, gentle animal, had never bitten anyone, nor given occasion to suspect that it would. That the children at school, including their son, had played with, teased and nagged the dog, when it, in a playful mood and as the result of their playing, may have scratched him; but not to such an extent that medical attention was needed. That their son was at fault in playing with the dog, and contributed by his action to his own injury.

Plaintiffs' demand was rejected and they have appealed.

The evidence shows that plaintiffs' son was about ten years of age. That defendant lived near the school which their son attended, and that defendant's children attended the same school. That the dog often followed defendant's children to the school house. It sometimes first went to the house of John Young, father of defendant, who also lived near the school house, and went to the school house from there.

The District Judge, citing Laurent, Vol. 20, page 675, and Martinez vs. Bernhardt, 106 La. 368, 30 So. 901, 55 L. R. A. 671, took the position that defendant's dog was in disposition, like the one in the case cited. That it was kindly and playfully disposed, not disposed to bite, and had never bitten anybody. That defendant had never known it to be otherwise, and was not aware that it was, at times, vicious. The case of Gillespi vs. Mr. and Mrs. George P. Blaise, 3 La. App. 59, is in line with and follows the authority cited. The lower court was also convinced that the dog was not mad.

In the above cited case, Martinez vs. Bernhardt, 106 La. 368, 30 So. 901, the evidence showed that the dog in question had never bitten anybody nor given evidence of a disposition to bite previous to the time when it bit the father of the plaintiffs in that case. In Gillespi vs. Mr. and Mrs. George P. Blaise, supra, the facts were similar to those established in the Martinez case.

We find the facts in this case to be different from what was shown in the Martinez and Gillespi cases. In this case the defendant testifies to the kindly, gentle and playful disposition of his dog, and that it had never bitten anybody, so far as he knew nor shown a disposition to do so. Two young lady school teachers at the school in question, testifying as to what they had observed, state that the dog appeared to them to be kindly and friendly disposed, that it had played with the children at ·school and had never shown a disposition to bite them. Two of defendant's neighbors also testified that according to their observation, the dog was of a playful, friendly disposition, not inclined to bite, and they too gave it a good name.

But this testimony cannot exonerate the defendant from liability under the law, Civil Code, Art. 2321, when the evidence shows that the dog was disposed at times to bite children, and that it had done so a number of times, and had bitten at least one before the occurrence in question. No effort was made to dispute the showing that the dog had done so, consequently the fact must be looked on as established.

The testimony as to the conduct of the dog is not to be regarded as conflicting, because its conduct was not observed by the witnesses who testify to the good disposition, at the times, when, according to the other witnesses, the dog could not have been otherwise than rough, disposed to bite children, and did so.

Article 2321 means that when a biting by a dog is established without any fault on the part of the party bitten, then the burden of proof is upon its owner to show that the biting was accidental and an unforeseen occurrence. The Court held that such was the rule in Delisle vs. Bourriague, 105 La. 77, 29 So. 731, 54 L. R. A. 420. In that case the Court held as follows, pages 83 and 84 (29 So. 734):

"Article 2321 of the Civil Code * * * is founded upon the presumption that the fault is chargeable to the owner of the animal that caused the damage, or to the person in whose use or under whose care it was at the time of the accident, and that presumption can be made to give way only in the presence of proof either of an unforeseen event, or by the imprudence of the one injured."

The case of Bentz vs. Page, 115 La. 560, 39 So. 599, is in line with the one just cited. In this case, the Court held in line with the syllabus, that in order to bring a case within the ruling of the Martinez case, it was necessary for the defendant to show that the animal had always been of a kind temper, had never attempted to bite anyone, and had never given occasion to suspect that it would bite; and failing to do so, the law presumes that the defendant was at fault in not confining the animal, which was a strange dog, to the premises. Damonte vs. Patton, 118 La. 530, 43 So. 153, 8 L. R. A. (N. S.) 209, 118 Am. St. Rep. 384, 10 Ann. Cas. 862; Serio vs. American Brewing Co., 141 La. 290, 74 So. 998, L. R. A. 1917E, 516, and Mercer vs. Marston, 3 La. App. 97, follow the Bentz case.

In the Serio vs. American Brewing Co. case, 141 La. 290, 74 So. 998, the owner was charged with knowledge of the dangerous disposition of the dog. In this case, as in those cited, there is no question of abandonment, but the defense is that the owner of the dog is not liable because it was kind and gentle, and the owner was not aware that it was disposed to, and had previously bitten anybody.

Ewel Young, principal of the school where the occurrence took place, remembered the time when the plaintiffs' son was bitten. He further remembered re-

ceiving a complaint that morning from one of the school patrons about the conduct of the dog toward his children, with the request that he notify the owner of the dog to keep it away from the school. The school principal says that when defendant's children went home at noon, he told them to tell their father that the dog was disturbing the children and to keep it at home, and that when defendant's children came back to school after the noon hour, they brought to him their father's answer, which was that if the dog was disturbing the children for them to take a stick and run it off. It was after this, and on the evening of this day, that plaintiffs' son was bitten.

The complaint in question was made by Ferreol Guillory. Mr. Guillory says that his children complained to him that the dog disturbed them, and that they were afraid of it. He was uneasy when his children complained to him, because he had heard the report that the dog might be mad. The evidence shows that some days previous to the time in question, the dog had a fight with a cat. The fight occurred at the home of John Young, father of defendant, who, for some reason, thinking that the cat might be mad, killed the cat, upon which the report became current that the cat was mad and had bitten the dog, and that as a result the dog was mad.

The evidence further shows that the dog went to the house of a neighbor named Granger a couple of days after the biting in question, and while there killed a duck. This neighbor had heard reports about the dog, and that it might have rabies, so he killed the dog.

The evidence shows that the physician who administered the Pasteur treatment to plaintiffs' son, also gave the same treatment about the same time to another boy whose name was not stated, and who had been bitten by defendant's dog about the same time, but whether before or after plaintiffs' son, the evidence does not show. The evidence further shows that still another boy named Hardgrover was also bitten by defendant's dog about the same time, but whether it occurred before or after plaintiffs' son was bitten, does not appear. This boy did not take the treatment. Still another boy, named Vizinet, was bitten by defendant's dog at the school house on the next day after plaintiffs' son was bitten. The Vizinet boy was called as a witness, and testified that he was bitten, and that another boy by the name of Guillory was bitten by defendant's dog about a week before him. The Guillory boy was therefore bitten before plaintiffs' son was attacked. The evidence shows that still another party named Thompson had a child treated for a dog bite, but it is not shown that defendants' dog bit the Thompson child.

Defendant's dog, however, was biting so many children about this time that no other conclusion can be reached than that his dog had, at times, a vicious disposition, and was disposed to and did bite children, and had bitten at least one, previous to biting the plaintiffs' son.

Under such a showing defendant cannot be discharged from responsibility for the conduct of his dog, by simply testifying with others, that they were not aware that the dog was disposed to bite, and had not bitten anybody until the occasion in question.

As was well stated in Serio vs. American Brewing Co., supra:

"Those who are vested with the corporate authority, are bound to know, that a dog so kept, with the knowledge and approval of the agent whom they placed

in charge of the plant, is a dangerous animal, which threatens injury to innocent people, and the fact that they choose to close their eyes to that condition, is not a good defense to an action in damages by a person, who, without fault on his part, has been bitten by the dog."

There is some question as to the fact of the injury. There was no one present when plaintiffs' son was bitten. The only evidence is what the boy himself says. According to him, while still on the school grounds in the evening after school, but after he had started home, the dog came up behind him and jumped on his back. He pushed it off with his hand, upon which the dog bit two fingers on his left hand and blood came from the bite. He further states that he did not know the dog was about, until it jumped on him. He denies that he had been playing with, teasing or nagging the dog at the time. The testimony of plaintiffs' son does not stand alone on that subject. It is supported by the evidence hereinabove enumerated, that the dog bit other children before, about the same time, and after biting plaintiffs' son.

There is also some question as to whether plaintiffs' son was bitten or merely scratched. We have the testimony of the boy that he was bitten on two fingers and that blood came from the bite. We also have the testimony of the father. He did not see the wound until three or four days afterwards, when his son, hearing the report about the condition of the dog, became alarmed and told him and his mother about it. At the time the boy told him, the father says that the wound looked like a bite, and was on the finger of the left hand. He also says that he informed a physician of this fact. The physician says that when he examined the wound, which was the day after the boy had reported it to his father, that it looked to him like a light long scratch, and was on the forearm.

We accept the testimony of the father and son. It matters not whether it was on the finger or the arm. It could hardly be that any doctor would administer the Pasteur treatment unless it had looked probable to him that saliva from the mouth of the dog might have gone into the boy and entered the circulation. It was no doubt explained to the father and son that a scratch from the dog's toe nails was harmless. Their alarm supports the boy's statement that he was bitten to the extent that same produced blood.

The dog was killed and disposed of by Mr. Granger a couple of days after the occurrence in question without effort being made to find out if it was really infected with rabies or not. The evidence therefore does not establish that it was infected; still infection might have existed. The fact that hydrophobia has not developed in any of the others bitten, does not establish the non-infection. Plaintiffs' petition and prayer justifies recovery for the biting and the damage resulting therefrom, even though the dog was not infected with rabies.

The father paid the doctor $40.00 for giving the Pasteur treatment. The plaintiffs made seven trips at a distance of six or seven miles with horse and buggy to take their son to the doctor while he was being treated. They claim on this account $21.00; this item will also be allowed. The $25.00 claimed by them for nursing their son will be allowed. Their son was greatly alarmed on account of the occurrence, and believed on one occasion that he was going mad. His fright and the treatment seriously affected him. We will allow $50.00 for their son on this account. The balance of plaintiffs' demand is refused.

The judgment appealed from is contrary to the law and the evidence, and therefore erroneous. It is ordered that the judgment appealed from be annulled, avoided and set aside, and it is now ordered, adjudged and decreed that plaintiff, Mayence Manuel have judgment against defendant, Lucius Young, for one hundred thirty-six dollars, of which $86.00 is on account of their expenses as above stated, and $50.00 is for Lance Manuel, his minor son. That said sums draw legal interest from the date this judgment becomes final until paid.

That defendant pay the costs in both courts.