PEREZ-SANDI v. BERGES

(December 16, 1929. Opinion and Decree.)

Merrick, Schwarz, Guste, Barnett & Redmann, of New Orleans, attorneys for plaintiff, appellee.

Delvaille H. Theard, of New Orleans, attorney for defendant, appellant.

WESTERFIELD, J. Defendant appeals from a judgment condemning her to pay to plaintiff $500 as damages for personal injuries sustained by plaintiff due to his having been bitten by a dog alleged to have been owned or harbored by defendant. Defendant admits that plaintiff was bitten by the dog and seriously injured, but denies that she is responsible upon the ground that she was not the owner of the dog, which it is alleged was a gentle and not a vicious dog, and that plaintiff's injuries were entirely due to his own fault in that he "insisted on attacking said dog and was bitten by said dog only after he had attacked and beat the dog."

Plaintiff had rented a garage attached to the premises of defendant. In addition to the storage of his car when not in use he placed, with the consent of defendant, a number of trunks therein, containing wearing apparel. On the day that he was bitten he had entered the garage for the purpose of obtaining some clothing from one of these trunks. As he opened the door the dog ran out. He thereupon attempted to notify Mrs. Braquet that the dog was in the street. Mrs. Braquet's daughter heard his call, intended for her mother, and called to the dog, which returned to the premises and bit plaintiff a number of times, being finally persuaded to let him alone by Mrs. Braquet, who had appeared by that time, throwing a bucket of water on him.

The charge that plaintiff attacked the dog and provoked the assault has not been substantiated by the evidence. The only attack made on the dog was by plaintiff's wife, who used a small stick, which she

found in the vicinity as a prop for some growing plants, in an effort to drive the dog away.

The question of the ownership of the dog is somewhat doubtful, though there is testimony in the record that Mrs. Braquet, the defendant, admitted that the dog had been given to her by her son-in-law, Maurice Rooney. Mrs. Braquet denies ever having made this statement and insisted in her testimony that the dog was the property of her son-in-law at the time plaintiff was bitten. Be this as it may, the evidence leaves no doubt in our minds that the dog was harbored by the defendant, was in her possession, and under her control. In Reneau vs. Brown et al., 9 La. App. 375, 119 So. 445, this court held that "a person, whether the owner or not, of a vicious dog, and whether the owner or not of the premises on which the dog is kept, may make himself liable to others by keeping or harboring such a dog after obtaining knowledge of its vicious propensities." See American-English Cyclopedia of Law, 2nd Ed., vol. 2, page 375.

The second ground of defense relied upon by defendant is based upon the jurisprudence of this state and of other jurisdictions reviewed by this court at length in the case of Gillespie vs. Blaise, 3 La. App. 59, to the effect that "the owner of a domestic animal is not in general liable for an injury committed by such animal unless it be shown that he had notice of its vicious propensity."

The dog in this case was of the species known as "Chow" and Mrs. Braquet is said by one of plaintiff's witnesses to have admitted that the dog was given to her by her son-in-law, because it had bitten one of his children, her grandchild. This is also denied by Mrs. Braquet. The ownership of the dog is claimed by her son-in-law,

who testified in the case. It is admitted, however, that on a previous occasion the dog had bitten a servant in Mrs. Braquet's employ. Mrs. Braquet, in referring to this incident, describes the wound inflicted by the dog as a scratch. However, she and her daughter, testifying in her behalf, admit that the servant was taken to the hospital, where the wound which the dog had inflicted was treated. Moreover, defendant, in her answer, averred that "plaintiff was warned not to attack the dog, but to go to a place of safety," and her daughter, in support of this allegation of the petition, testified that she called to plaintiff, before he was bitten, advising him not to call the dog because of the possibility of his being bitten. In her own words she advised plaintiff: "Don't call him because he may bite you. Go in your car or on the porch." When asked on cross-examination why she had given plaintiff this warning, she answered, "Because those dogs are naturally of a very nervous temperament and he wasn't accustomed to go into the street, and I was afraid something would get him nervous."

Article 2321, R. C. C., reads as follows:

"The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."

We have said that the jurisprudence of this state was to the effect that previous knowledge of the vicious tendency of an animal was necessary to hold its owner answerable in damages. This is our appreciation of the present state of the law in

Louisiana, though the question was not originally free from doubt. In Delisle vs. Bourriague, 105 La. 77, 29 So. 731, 733, 54 L.R.A. 420, a case in which the Supreme Court was reviewing a decision of this court on certiorari, this court held:

"We do not think that the doctrine of scienter as a prerequisite to the liability of the owner finds lodgment in our law and jurisprudence."

It was there pointed out that in France, from which source our Codal article was obtained, the commentators Marcade and Demolombe, and others, were not in entire agreement, but the unqualified statement of liability in our Code was pointed to as justifying the exclusion of the doctrine of scienter in Louisiana. This court in that case, in discussing this point, said:

"In a case in which a father was sued for damages caused by his minor child, it was said 'the law itself imputes the fault to the father.' It presumes that it resulted from lack of sufficient care, watchfulness and discipline on his part in the exercise of the parental authority. This is the very reason and foundation of the rule. For like reasons, the law imposes responsibility upon the owner for damages occasioned by his animals, who have certainly no greater powers of discernment than the infant of tender years."

In discussing this dictum the Supreme Court in the cited case said:

"We are not inclined to go to the extent that it is of no consequence in determining the liability of the owner, whether or not he had knowledge of the vicious propensities of his animals. True, the owner of the animal is responsible for the damage it has caused. We do not think, however, that there is no limitation to his liability and that in all cases of bad conduct of the animal causing the injury, he is to be held in damages. The article itself relating to the owner's responsibility contains restrictions and qualifications. * * * Be-

sides, that the damages caused by animals are not viewed, as relates to liability, as being similar to the damages caused by a minor for which a tutor is responsible."

In summing up the matter the court said:

"Article 2321 of the Rev. Civ. Code (Art. 1385 C. N.) is founded upon the presumption that the fault is chargeable to the owner of the animal that caused the damage, or to the person in whose use or under whose care it was at the time of the accident, and that presumption can be made to give way only in the presence of proof either of an unforeseen event, or by the imprudence of the one injured. Fizier-Herman, Vol. 3, p. 905, No. 37.

"The French commentators have approvingly referred to this view. From Laurent, Vol. 20,, p. 675, we quote: That is to say there is no responsibility when there is no fault, the one to whom the damage is imputable should be permitted to prove that he was not at all at fault. But it is only needful to prove the lightest fault (culpa levis). to hold the owner responsible."

Subsequent adjudications by our Supreme Court have not affected the views expressed in Delisle vs. Bourriague, supra Martinez vs. Bernhard, 106 La. 368, 30 So. 901, 55 L.R.A. 671, 87 Am. St. Rep. 306; Bentz vs. Page, 115 La. 560, 39 Sou. said:

"While the least act of negligence should be enough to hold one liable, who owns a dog, yet it must appear that there was some negligence, however slight."

In the Bentz case Justice Land quotes Shawhan vs. Clark, 24 La. Ann. 390, to the effect that the burden of proof is on the owner of the animal to show that he was without the slightest fault and did all that was possible to prevent the injury. The holding in the Shawhan case, he ob-

serves, is in conformity with the views of Laurent.

In Mercer vs. Marston, 3 La. App. 97, a well-considered case from the Second Circuit, the jurisprudence of our state is reviewed at considerable length and a comparison made with the adjudication of Common Law states and the conclusion reached that the slightest negligence or fault on the part of the owner results in responsibility.

Can it be said that, under the facts of this case, Mrs. Braquet was guilty of the slightest fault in harboring the dog which bit plaintiff? It is vigorously asserted in her behalf that the dog had not theretofore displayed any vicious tendencies; that he had always preserved a gentle demeanor and exhibited a good disposition. But she admits that the dog had previously bitten a negro servant in a manner, and with such severity, as to make it necessary for the servant to repair to a hospital for treatment. There is also a statement in the record that the dog had bitten one of her grandchildren, which, as previously remarked, she denies, but it is very significant that prior to the dog's attack upon plaintiff Mrs. Braquet's daughter called to him and warned him that the dog might bite him and advised that he seek shelter in his automobile. This warning is used defensively by Mrs. Braquet in an effort to establish plaintiff's negligence in failing to heed it, but we consider it eloquent of the general fear in the household of the dog's vicious tendencies. It was a "Chow" dog, whose nervous disposition was testified to by defendant's daughter. In any event, when tested by the rule which prevails in this state to the effect that the slightest fault on the part of an owner of an animal will render him responsible for damages caused by the animal, plaintiff's right to recover in this case cannot be questioned. The testimony of defendant and the witnesses testifying in her behalf alone indicate that the dog had given sufficient evidence of its dangerous character to render defendant's conduct in harboring it, and not confining it, negligent and culpable. It was certainly culpa levis.

We are of opinion that defendant's liability has been established by the evidence.

Plaintiff has answered the appeal and asked for an increase in the amount of the award. There can be no question about the serious nature of plaintiff's injuries. He was bitten twenty-two times and the essential medical treatment involved considerable pain and suffering. In addition to this the possibility that the dog might have been infected with rabies subjected plaintiff to great anxiety for a period of two weeks after his injuries, this being the time during which the disease might manifest itself in plaintiff if he had been innoculated with the virus of that dread disease by an infected dog. We feel, however, in this case, very much as the Supreme Court expressed itself in Jackson vs. Briede, 156 La. 573, 100 South. 722, 726, that "the court should not impose a penalty in money greater, perhaps, than the defendant can pay." The fault of defendant in harboring a vicious dog unquestionably involved her with full responsibility for the consequences to plaintiff, but the record indicates that defend-

ant was in very modest circumstances, a fact which, under the jurisprudence, should be considered. Gallman vs. Young, 6 La. App. 138; Loyacano vs. Jurgens, 50 La. Ann. 441, 23 South. 717, 718; Daly vs. Kiel, 106 La. 170, 30 South. 254, 256. In the Daly vs. Kiel case the court said:

"The evidence on the ability of the defendant to respond in damages is meager, but the impression made by it is that he is a man of limited means, and it is likely that the jury took this into consideration, as they could do, in arriving at the amount of their verdict."

In Loyacano vs. Jurgens, the court said:

"There is no testimony in the record touching the circumstances of defendant. It may be, however, that the trial judge had knowledge otherwise of his circumstances, and this may account for the small allowance made by him. A party's circumstances may not improperly be considered to a reasonable extent in estimating damages to be awarded in a case like this, where defendant personally was not at fault. It were the better practice, though, that the same be disclosed by the evidence when intended to be invoked.

"Several times the amount awarded this plaintiff would not be too much for the injuries he sustained. While this is so, we hardly feel warranted, in this particular case in increasing the allowance beyond eight hundred dollars."

Nevertheless, regardless of the considerations we have mentioned the amount awarded in this case is too small and we have concluded to increase it to $1,000.

For the reasons assigned the judgment appealed from is amended by increasing the amount awarded plaintiff to the sum of $1,000.00, and as thus amended, it is affirmed.