PEYRONNIN v. RILEY

(January 19, 1931. Opinion and Decree.)

Beard & O'Keefe and C. A. Peyronnin, of New Orleans, attorneys for plaintiff, appellant.

Legier, McEnerny & Waguespack, of New Orleans, attorneys for defendant, appellee.

JANVIER, J. Plaintiff sues for damages sustained as the result of a bite inflicted upon her by a dog alleged to have belonged to defendant.

The defense is twofold: First, a denial of ownership of the dog; and, second, a denial of the vicious character of the animal.

The judge a quo, in rendering judgment for defendant, gave reasons so complete and so thoroughly in accord with our views, not only on the facts as disclosed by the evidence, but also with reference to the law applicable to the harboring of animals and the liability of owners or harborers thereof, that we feel that the publication of those reasons will be of interest and benefit to the bar. We therefore adopt them in full:

"The law of animals is thoroughly well settled in this state, and as far as I know, the jurisprudence of this state is consistent with that of the sister states which live under the common law system, and with England in which the common law system was derived. Writers of the jurisprudence divide animals into two classes, so far as the question of consideration is concerned, namely: animals ferae naturae and animals mansuetae naturae. The first class embraces all wild, undomesticated animals, such as bears, lions, tigers, wolves, buffaloes, deer.

"The principle applied to animals ferae naturae is that they are inherently dangerous, and that any man who keeps or harbors an animal ferae naturae does so at his peril. When he undertakes to keep or harbor an animal ferae naturae he knows that he is dealing with an object or thing dangerous to humanity, and the jurisprudence is that he keeps him at his peril and if any one is harmed by animal ferae naturae, he who kept or harbored him must respond in damages.

"As to animals mansuetae naturae, that is, the class of domesticated animals, such as horses, sheep, goats, cows, bulls and dogs, they having been domesticated for untold centuries, are regarded as inherently non-offensive, and not being of a risk to human beings, and every man has the right to keep and harbor animals mansuetae naturae, some of which I have mentioned; but, the law is that any one of those domesticated animals, those animals mansuetae naturae, is liable, whether it be a horse, cow, sheep, or other such animal, to become vicious, and when they become vicious they are recognized as dangerous to humanity and then, so far as the law is concerned, fall into the category pro hac vice of animals ferae naturae; and, then, a man who continues to keep or harbor, entirely irrespective of ownership, a domesticated animal which has by its previous history evinced the fact that it has become one of the vicious class, keeps him at his own peril.

"Now, the evidence in this case shows that a dog roaming the streets, masterless, adopted the Riley home, and being of a gentle, playful disposition, was adopted by the Rileys; and that, irrespective of ownership, the Riley family, of which Mr. Riley was the head and master, did harbor the animal, fed it, and encouraged its habitation, and encouraged its domiciling himself at the Riley home. Therefore, if it were shown by the evidence that this dog had at any time evinced a vicious or ferocious nature or characteristic so as to put Mr. Riley, the head and master of the household that harbored it, on notice that he was harboring a vicious, ferocious, or dan-

gerous animal, he would be as liable for its tort as if he were harboring a bear, a lion, or a wolf. The evidence, to my mind, is conclusive that this dog was of an affectionate and playful disposition, and, like many dogs, especially fond of children, a characteristic often found in dogs; and the evidence shows clearly that all the children in the neighborhood for blocks around knew the dog, loved it, and played with it, and that that animal was a neighborhood favorite, especially among the children.

"Now, as I say, when a domesticated animal suddenly and without previous warning of its vicious nature, commits injury, the owner or harborer of such an animal is not liable; but, if there be any occurrence, one or many, in the past history of the animal sufficient to place the owner or harborer of the animal on notice that it is vicious or dangerous, then he is liable for the animal's torts. The only attempt made in this case is to show that in March of 1928, fully one year and a little more from the date on which the plaintiff was bitten by the dog, that this dog had bitten Ethel, the young daughter of plaintiff. Now, the evidence in this case shows that young Charley Riley, young Mellinger and Ethel were in the back yard in the Riley house, that the two boys were wrestling and the dog lying in their way, that Ethel undertook to pull the dog out of the way of the two athletes, and in doing so stepped on the dog's paw, with a resulting instantaneous snap from the dog inflicting such a slight injury on one of her legs that her own mother said that it took nearly a week to heal, and Mrs. Riley who saw the wound said it was such a mere scratch that she put iodine on it and promptly proceeded to forget about it.

"Now, the evidence shows that the mother and father of Ethel, and the mother is the plaintiff in this case, attached no importance to this occurrence, nor did they regard it as evidencing a vicious, ferocious or dangerous nature in the dog, for the evidence is overwhelming that the Peyronnin children, in common with all the children in that neighborhood, continued to play with and pet the dog after this occurrence as before, and Mr. Riley, the defendant in this case, swears that he never heard of the occurrence until after the biting of Mrs. Peyronnin, on which this suit is based, and which took place more than a year thereafter. Now, if this occurrence, of which Mr. Riley swears he never heard, and of which Mrs. Peyronnin must have known as she alleges it in her petition, made no impression upon the minds of Mr. and Mrs. Peyronnin that this dog was vicious and should have been done away with at that time, it could have made no such impression upon the mind of Mr. Riley who swears that he never heard of it; and, again, if that occurrence was sufficient to evidence a vicious, ferocious and dangerous nature in that dog it was the height of imprudence and negligence upon the part of Mr. Peyronnin, and of this plaintiff, living next door in a house without any fence in front not to have declared their knowledge of the viciousness of the dog and have demanded of their neighbor next door, next door neighbor, that the dog be done away with. So, in my opinion, the most that can be made of this case is that the defendant, Riley, adopted and harbored a domestic animal, whom he had every reason to believe was gentle, affectionate and playful, and that he cannot be held in damages for this sudden outbreak of the dog and injury to the plaintiff. There will be judgment for the defendant dismissing the suit at her costs."

If defendant was in the slightest degree at fault in that he had knowledge, or should have had knowledge of any vicious propensities in the animal, he would be liable for the results of its actions, and it is even true that, in order to establish the liability of one who harbors a vicious animal, it is not essential that it be shown that the harborer knew of any previous bite or damage resulting from the said characteristics of the animal, if its vicious nature was manifest, or had previously been exhibited. In the syllabus in the matter of Montgomery v. Koester, 35 La. Ann. 1091, 48 Am. Rep. 253, appears the following:

"The rule of our law, as well as of the common law, is, that he, who owns and keeps a dangerous animal knowing it to be such, is bound, at his peril, to keep him

up safe from hurting innocent persons, and if, for want of sufficient care, the animal escape and do injury, the owner is liable.

"The scienter may be established by attendant circumstances without necessity, in all cases, of proving prior cases of injury."

It may also be conceded that, when a domestic animal has caused injuries, the burden rests on him who harbors the animal to show that there have been no previous outbreaks or manifestations evidencing viciousness on its part. In a syllabus written by the court in Bentz v. Page, 115 La. 560, 39 So. 599, it was said that:

"* * * it was necessary for defendant to show that the animal had always been of a kind temper, had never attempted to bite any one, and had never given occasion to suspect that he would bite; and, failing to do so, the law presumes that the defendant was in fault in not confining the animal. * * *"

But here, as was found by the district judge, the dog had for years been the playfellow of all the children in the neighborhood, and there was not the slightest reason to suspect that it would not remain as harmless as it had always been. Under these facts, then, the owner or harborer is not liable.

"A peaceable dog may rightfully be in front of the store of its owner. At any rate, an owner cannot well be charged with neglect if his dog, which has never been known to be otherwise than gentle and kind, finds its way to the sidewalk in front of his place of business. * * Here the testimony has not fastened even the slightest blame upon the defendant. He was the owner of a domestic animal that was in front of his store, and while there bit the deceased. Upon this showing, plaintiffs are not entitled to a judgment." Martinez et al. v. Bernhard, 106 La. 369, 30 So. 901, 55 L. R. A. 671, 87 Am. St. Rep. 306.

The judgment appealed from is affirmed.

HIGGINS, J., takes no part.