## WOULFE v. D'ANTONI.*
### No. 14987.

Court of Appeal of Louisiana. Orleans.
Jan. 7, 1935.

---

*Rehearing denied Feb. 4, 1935.

Ogden & Woods, of New Orleans, for appellant.

Richard A. Dowling and Maurice R. Woulfe, both of New Orleans, for appellee.

LECHE, Judge.

Plaintiff alleged that on or about November 29, 1932, while in the yard of her residence in the city of New Orleans, she was suddenly and viciously and without provocation attacked by defendant's large female police dog, which bit her about the arms and legs and bruised her chest and side. She alleged that the dog was notoriously vicious and dangerous, not only to the knowledge of the neighbors, but to the knowledge of the defendant himself. She further alleged that during July of the same year, about four months prior to the injury complained of, the same dog had attacked and bitten her and had to be driven off with a stick by one of the neighbors. Plaintiff prayed for total damages in the sum of $10,-000.

Defendant denied all the allegations in the petition, except amicable demand, and alleged that his dog was not vicious, but, on the contrary, was a playful, gentle, and friendly dog. He alleged that the dog had a reputation for gentleness, and that up to the time of the injuries sustained by plaintiff he had no knowledge whatsoever of any vicious tendencies in the animal. He further alleged that, should the court find any negligence on his part, that plaintiff's negligence or contributory negligence was the proximate cause of the injury, and, consequently, barred any recovery by her. Her negligence, as alleged, consisted in picking up in her arms her own small dog, which defendant's dog was chasing, thereby causing defendant's dog to leap upon her to get the smaller dog, in consequence of which she was injured.

The jury found for the plaintiff in the sum of $750, and judgment was rendered accordingly. It is from this judgment that defendant has appealed.

Plaintiff and defendant lived next door to each other; their properties being separated by a hedge. Plaintiff testified that she had gone down the back steps into her rear yard to hang out some silk pieces which she had in a small tub; that she put down the tub and prepared to wipe off the clothesline with a piece of rag, when she was suddenly and viciously attacked by defendant's police dog; that the dog's rush knocked her down, and that she fought with him for about ten minutes in an effort to save her life; that her screaming attracted her own Spitz dog, which ran to and jumped upon her, and that, after several attempts, she seized it and placed it around her throat to protect her from the attacks of the police dog; that the police dog then gave up the attempts at her throat and directed his thrusts at her side; that, when she became exhausted from her efforts and was able to withstand the attack no longer, defendant's yardman, Ike McCraney, attracted by her screams for help, called off the police dog, which returned to its own yard; that Mrs. Wentzel, a neighbor, then assisted her upstairs, and shortly thereafter defendant's daughter called to offer her sympathy and assistance.

Plaintiff further testified that in July, several months prior to the injury complained of, she went into her back yard to invite Mr. Lamantia, a neighbor, to dinner, and was attacked by the same dog, and that Mr. Lamantia, hearing her screams, rushed to her assistance and beat the dog off with a clothespole; that on the same evening she showed her arm to Ike McCraney and told him to tell defendant to keep the dog in his own yard.

Mrs. Celina Wentzel, who occupied an apartment in the same house with plaintiff, testified that at the time of the occurrence complained of she was in bed taking a nap, and that, upon hearing the screams of plaintiff, she went in the back yard and saw the dog attacking plaintiff; that she watched the fight, and then went inside to get a broom to beat the dog off, but was afraid to go to plaintiff's assistance; that she went inside several times and returned while the attack was in

progress, and that, upon her second return, she saw the Spitz dog in plaintiff's arms; that, after the police dog was called off, she assisted plaintiff into her house.

Nicholas Lamantia, who also lived in the same apartment house as plaintiff, testified that the police dog, although not a puppy, was not fully grown. He testified that he witnessed the first alleged attack on plaintiff in July; that plaintiff was holding her Spitz dog in her arms, and that defendant's dog was leaping at it and that he drove the police dog off with a piece of clothespole and that Ike McCraney came over and the police dog followed him away; that he did not see the dog bite plaintiff.

Henry Thomas testified that he lived in the apartment under plaintiff until October, 1932, and then moved next door; that the police dog had a bad reputation prior to November, 1932, but that he personally knew of no attacks or bites.

Herman Rahn testified that he delivered parcels to defendant's home during 1932, and that on different occasions the police dog jumped on him and tried to grab him, that his assistant, a boy named Lally, was bitten by the dog while delivering parcels at the kitchen door of defendant's home, and that he complained to defendant's servants, or those whom he thought to be defendant's servants. He testified on cross-examination that he spoke to defendant's wife when the dog bit the Lally boy, which, he presumed, was long after the injury which plaintiff complains of.

Leonard Reed testified that about three weeks before the attack on plaintiff he was delivering milk at plaintiff's house, when a big dog ran at him through the hedge and that he ran to his milk truck; that the dog did not bite him, and he did not know whether or not this was defendant's dog.

Emma Train, plaintiff's washerwoman, testified that in February, 1933, defendant's dog growled at her and that she grabbed her broom and chased him off. She said he did not bite or try to bite her.

Elbert Woodward, who did scrubbing and cleaning for plaintiff, testified that several weeks after the attack on plaintiff he drove the dog away from two small colored girls in the Lamantia back yard. The children were not bitten. The dog merely ran after them.

Roy Lally, a delivery boy who worked with the witness Rahn, testified that he delivered packages to the defendant's home; that in May, 1933, after the attack complained of, defendant's dog bit him on the right leg, while he was delivering a package at the rear of defendant's home; that prior to that time the dog had never bothered him; that he filed suit against defendant for $2,000 for his injuries and settled out of court for $100.

Mrs. H. O. Thomas, wife of the witness H. O. Thomas, testified that in August, 1932, she heard her son, age five years, call to her, and that she rushed to the back and saw him coming up the back steps; that the dog had pulled off his shoe and that she picked up his shoe, which showed the imprint of the dog's teeth; that she did not see the dog pull off the shoe, but found it in the yard; and that she reported the occurrence to Ike McCraney.

Defendant, called to the stand under cross-examination, admitted ownership of the police dog. He testified that the negro, Ike McCraney, had worked for him seven or eight years; that he was a general handy man about the yard and ran errands, and that he did not have charge of the dog, but looked after it only incidentally along with the other servants and members of his family. On direct examination defendant testified that he had no knowledge whatsoever of any attack on plaintiff until informed by his daughter, who had visited plaintiff immediately after the injury complained of; that the dog was playful and gentle, and that he never had any knowledge of vicious tendencies, or that the dog had ever attacked any one; that the dog was given to him by a friend in March, 1932, and at that time it was about two months old; that he played with the dog when he was home, and that no one ever informed him that it was vicious; that Ike McCraney was a faithful and trusted servant, and never informed him that the dog had bothered any one.

Beulah Scott, who formerly worked for the Lamantias, testified that she heard plaintiff's screams and went to the back door and saw defendant's dog jumping at the Spitz in plaintiff's arms. She said she called to plaintiff to come inside and that plaintiff put her dog in the kitchen. She also testified that she saw Mrs. Wentzel standing in the door during the occurrence.

J. E. Brock, a meter reader, testified that he called at the defendant's home over a period of several years in his line of duty, knew the dog, petted it, and never heard or considered that it was vicious.

Sam Capello, who did defendant's cleaning and pressing, testified that he had been visiting defendant's premises for a number of years; that he knew the dog well, played with it, and knew it to be of a good disposition.

E. M. Comiskey, president of a rug cleaning establishment, testified that he visited defendant's home in the course of his business, knew the police dog, and that it was playful and good-tempered.

C. W. Loescher, driver of a beverage delivery truck, Boatner Way, a truck driver, Walter S. Ory, a laundry driver, Mrs. Peter Graffagnino, a friend and neighbor of defendant's family, Pierre Jourdes, a landscape gardener, John Oubert, a chauffeur for Mrs. Graffagnino, Lelia Osgood, defendant's washerwoman, Miss Sara D'Antoni, defendant's daughter, Olivia Taylor, defendant's cook, Leona Potter, maid at defendant's home, Mrs. D'Antoni, defendant's wife, Jose Ramos, one of defendant's servants, and B. C. D'Antoni, defendant's son, all testified that they knew the dog, saw it frequently, and that it was of a playful and gentle disposition. Henry Humphries, a gardener working for defendant, testified that he slapped at the dog with his hat, and that, in grabbing at the hat, she had bit him on the thumb just prior to whelping her pups.

An action for damages in this state against the owner of an animal, resulting from injuries or damage inflicted or caused by such animal, flows from article 2321 of the Civil Code:

Civ. Code, art. 2321: "The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."

In the case of Montgomery v. Koester, 35 La. Ann. 1091, 48 Am. Rep. 253, the court said:

"The action is brought under article 2321, R. C. C., for damage caused by dogs belonging to defendant, in attacking and biting the plaintiff.

"The facts are, that plaintiff, while walking in the public street at night, on arriving opposite an alleyway opening into defendant's premises, was attacked by two dogs and injured as charged. * * *

"These were watchdogs kept by defendant for the protection of his premises, and their dangerous character and knowledge thereof by defendant may be inferred from their size, their actual conduct, the admitted purpose for which they were kept, and the very care exercised in their custody; for it appears from the testimony offered by defendant, that his practice was to chain up the dogs every morning at daylight and to loose them only at night.

"We think this sufficient to charge him with the scienter. 1 Thompson on Negligence, p. 203, § 17 and cases there cited. *. * *

"The rule at common law is ancient and well settled that one keeping a dangerous or mischievous animal, with knowledge of its propensities, 'must, at his peril, keep him up safe from doing hurt, for though he use his diligence to keep him up, if he escape and do harm, the owner is liable to answer in damages.' 1 Hale's Pleas of the Crown, 430; May v. Burdett, L. R. 9 Q. B. 112; Cox v. Burbridge, L. R. 13, C. B. 436; Flecher v. Rylands, L. R. 1 Exch. 265, (S. C.); Rylands v. Flecher, L. R. 3 H. L 230.

"Our law certainly does not afford a more lenient rule.

"The French Courts and Commentators, in applying article 1385 of the Napoleon Code, corresponding to our own article 2321, enforce the same doctrine.

"Marcadé, in his usual trenchant style, says: 'Of two things, one: either the owner has not taken all the precautions which prudence required, and is thus in fault; or the animal is so vicious that all imaginable precautions to prevent it from injuring are of no avail, in which case the owner is in fault merely by keeping such an animal.' Marcadé on Art. 1385, No. 1; 8 Demolombe, Traité des Contrats, No. 654; 5 Larombierè, on Art. 1385, No. 3; 3 Aubry et Rau, § 418, p. 559; 2 Arcollas, Droit Civil, p. 981.

"The exceptions to the rule of the owner's liability are cases of vis major, contributory fault or negligence on the part of the person injured and the like explained by Demolombe, within none of which, however, is this case embraced. 8 Demolombe, No. 650.

"The French authorities go to the further extent of holding that the character of the animal and the knowledge of its vicious propensities by the owner, are of no consequence in determining the liability of the owner.

"We have no occasion in this case to determine whether we should follow them to that extent.

"As we have shown, both the highest English and French authorities agree on the doctrine on which we rest this case, and we feel safe in applying it."

In that case the dogs were admittedly dangerous and ferocious, known to be so, and kept for the purpose of protection, and the owner

was held liable for his negligence in not keeping such animals well secured.

In McGuire v. Ringrose, 41 La. Ann. 1029, 6 So. 895, 896, plaintiff was walking down the street on her way to work, when she was set upon by a vicious dog. The court said:

"The dog was a vicious one, and was usually chained during the day, and was released at night. He had previously bitten one person, and attacked another, in the street, anterior to this occasion.

"The Code provides that 'the owner of an animal is answerable for the damage he has caused,' and 'where the master has turned loose a dangerous or noxious animal * * * he must pay for all the harm done.' Rev. Civil Code, art. 2321.

"This case is quite similar to that of Montgomery v. Koester, 35 La. Ann. 1092 [48 Am. Rep. 253]. * * * "

The court then quoted from the opinion in the Montgomery Case, supra, relative to the obligations of the owner of a ferocious animal.

In the case of Delisle v. Bourriague, 105 La. 77, 29 So. 731, 733, 54 L. R. A. 420, Justice Breaux goes thoroughly into the liability of the dog owner in his opinion. He said:

"We pass to a consideration of the defendant's responsibility for the injury inflicted by her dogs. * * * The court of appeal, in deciding the case, found that 'there is conflict of evidence as to the character of the dogs and defendant's knowledge thereof, but we should accept the conclusion of fact of the judge, who heard and saw the witnesses. But, were this otherwise, we do not think that the doctrine that scienter is a prerequisite to the liability of the owner finds lodgment in our law and jurisprudence. Not only does any act whatever of man that causes damages to another oblige him by whose fault it happened to repair, but he is responsible for damages resulting from his negligence or imprudence, caused by the acts of the thing which he has in his custody. Rev. Civ. Code, arts. 2315, 2316, 2318, are positive and equivocal. The owner of the animal is answerable for the damage he has caused. There is no qualification, no restriction, no condition affixed to the legal responsibility;' citing Marcade and Demolombe in support of the views before expressed.

"The court of appeal, in its opinion, also says: 'In a case in which a father was sued for damages caused by his minor child, it was said "the law itself imputes the fault to the father." It presumes that it resulted from lack of sufficient care, watchfulness, and discipline on his part in the exercise of the parental authority. This is the very reason and foundation of the rule. For like reasons, the law imposes responsibility upon the owner for damages occasioned by his animals, who have certainly no greater powers of discernment than the infant of tender years;' citing Mullins v. Blaise, 37 La. Ann. 92. * * *

"This brings us to a consideration of the doctrine of scienter as an element in fixing the owner's liability. We are not inclined to go to the extent that it is of no consequence, in determining the liability of the owner, whether or not he had knowledge of the vicious propensities of his animals. True, the owner of the animal is responsible for the damage it has caused. We do not think, however, that there is no limitation to his liability, and that in all cases of bad conduct of the animal causing the injury he is to be held in damages. The article itself relating to the owner's responsibility contains restrictions and qualifications. The owner is not responsible if the animal had been lost or had strayed more than a day, and he may discharge himself from responsibility by abandoning it, save where the master has turned loose a dangerous animal, for then he must pay for all the harm done. There is no question before us of abandonment. We quote above from the article relating to injury caused by animals to sustain the proposition that there are limitations to the responsibility. Besides that, the damages caused by animals are not viewed, as relates to liability, as being similar to the damages caused by a minor for which a tutor is responsible, or the damage for which employers are responsible growing out of the acts of their employees, teachers for their scholars, and artisans for their apprentices. The control and relation between one and the other are not the same. The sentiment of consideration and respect and control between man and animals is not the same as that which exists between man and man, and, in consequence, the liability for damages is fixed by different rules. As to the animal, as it is in some cases with a mere thing, it may be abandoned in case it has caused damage.

"In our view of the authorities upon the subject, we have not found that under the civil law, from which the articles of our Civil Code are derived, it is always held that the character of the animal, and knowledge of its propensities to do harm, is of no consequence in passing upon the responsibility of the owner. We take it that the rule is the other way in so far as the damage is caused by an accident not to be foreseen or guarded against;

as when it arises from a vis major. Article 2321 of the Revised Civil Code (article 1385, Code Nap.) is founded upon the presumption that the fault is chargeable to the owner of the animal that caused the damage, or to the person in whose use or under whose care it was at the time of the accident; and that presumption can be made to give way only in the presence of proof either of an unforeseen event or by the imprudence of the one injured. 3 Fuzier-Herman, p. 905, No. 37.

"The French Commentators have approvingly referred to this view. From 20 Laurent, p. 675, we quote: 'That is to say, that there is no responsibility when there is no fault; the one to whom the damage is imputable should be permitted to prove that he was not at all at fault. But it is only needful to prove the lightest fault (culpa levis) to hold the owner responsible.'

"In all the cases in our jurisprudence to which we have been referred there was some fault for which the owner was responsible; notably the cases of Montgomery v. Koester, 35 La. Ann. 1094 [48 Am. Rep. 253], and McGuire v. Ringrose, 41 La. Ann. 1029, 6 So. 895."

In Martinez et al. v. Bernhard, 106 La. 368, 30 So. 901, 55 L. R. A. 671, 87 Am. St. Rep. 306, the opinion by the same author reads:

"We have not found, after carefully reading the testimony, that the animal was vicious and dangerous. It was not of a savage and bloodthirsty breed, addicted to acts of cruelty such as have brought the pure bloodhound into ill repute. It was, we are informed by the testimony, a rabbit dog, and had never before attempted to bite any one. He was, at the time, in front of the store kept by the defendant.

"A peaceable dog may rightfully be in front of the store of its owner. At any rate, an owner cannot well be charged with neglect if his dog, which has never been known to be otherwise than gentle and kind, finds its way to the sidewalk in front of his place of business. The owner, it is true, is liable for damages caused by his animal; but, to render him liable, it is necessary to prove that he is in some way negligent, or that he did not prevent the injury where it was reasonably to be expected that he should have prevented it. Only the lightest fault, it is true, is sufficient to render the owner liable. Here the testimony has not fastened even the slightest blame upon the defendant. He was the owner of a domestic animal that was in front of his store, and while there bit the deceased. Upon this showing, plaintiffs are not entitled to a judgment.

"The decisions of this court have always found that the owner was in some way at fault in cases in which damages were allowed. Montgomery v. Koester, 35 La. Ann. 1091, 48 Am. Rep. 253; McGuire v. Ringrose, 41 La. Ann. 1029, 6 So. 895. In Delisle v. Bourriague, 105 La. 84, 29 So. 731 [54 L. R. A. 420], the court said that there is no responsibility when there is no fault."

In his opinion in Bentz v. Page, 115 La. 560, 39 So. 599, 600, Justice Land said:

"The evidence shows that the dog referred to, a red Irish setter, did on October 19, 1903, attack plaintiff as he was passing along the street in front of defendant's residence, and, throwing him down, bit him severely on the thigh. The dog leaped the hedge fence in order to make this assault, which seems to have been without provocation. * * *

"Defendant relies on the Martinez Case, 106 La. 368, 30 So. 901, 55 L. R. A. 671, 87 Am. St. Rep. 306. Article 2321 of the Civil Code declares that 'the owner of an animal is answerable for the damage he has caused.'

"The Martinez Case holds that the owner of a dog, which bites a person, is not responsible in damages, where it is shown that the animal 'has always been of kind temper, and has never attempted to bite any one, and has never given occasion to suspect that it would bite.' After citing 20 Laurent 675, the court in that case said:

"'While the least act of negligence should be enough to hold one liable who owns a dog, yet it must appear there must be some negligence, however slight.'

"According to the text of Laurent, the owner of an animal will not be declared responsible. 'Lorsqu'il n'a commis aucune espece de negligence et qu'il n'a pu ni prevoir ni empecher l'accident dammageable.' According to the same writer the law presumes that the owner of the animal is in fault, and the burden of proof is on him to show that he was without the slightest fault and did all that was possible to prevent the injury. Laurent gives as an example the case of a gentle horse frightened beyond control by unusual noise in a street. This same doctrine was announced in Shawhan v. Clarke, 24 La. Ann. 390, where the running away of a horse was caused by a third person recklessly driving his vehicle against the buggy of the defendant.

"Laurent says that the question whether the legal presumption of fault on the part of the owner can be rebutted by proof that he was without fault was a subject of controversy among the commentators, but that the doc-

trine has been recognized in the jurisprudence of France.

"We do not think that the defendant has rebutted the legal presumption of fault on his part. The actions of the dog stamped him as a dangerous or vicious animal, disposed to assail, without provocation, persons passing along the street in front of defendant's residence. It has not been shown here, as in the Martinez Case, that the dog has always been of a kind temper, has never attempted to bite any one, and has never given occasion for the suspicion that he would bite. * * * "

In Damonte v. Patton, 118 La. 530, 43 So. 153, 154, 8 L. R. A. (N. S.) 209, 118 Am. St. Rep. 384, 10 Ann. Cas. 862, the same author said: "The law is 'that the owner of an animal is answerable for damage he has caused' (Civ. Code, art. 2321); and the presumption is that the owner of the animal is in fault, and the burden is on him to show that he was without the slightest fault and did all that was possible to prevent the injury. Bentz v. Page, 115 La. 560, 39 So. 599. There can be no escape from the conclusion that the driver was in fault in leaving the horse loose in the street while he was chasing his hat."

In the case of Ladrix, Widow of Latour, v. DiMaggio, 8 Orleans App. 167, Justice St. Paul, who was then a member of this court, said:

"If the liability of the owner of a domestic animal for the injury done by the latter were absolute and unqualified, plaintiff's case would be fully made out and such as to warrant our affirming the judgment of the district court which was in her favor and for the sum of three hundred dollars.

"But the jurisprudence, as laid down by our court of last resort sanctions not this principle."

The opinion then recites the rules laid down in Delisle v. Bourriague, Martinez v. Bernhard, Bentz v. Page, and Montgomery v. Koester, supra, and continues:

"As will readily be seen there is not the slightest conflict between these cases; on the contrary, taken together they establish a complete and entirely harmonious doctrine as to the liability of owners and keepers of dogs, which may be summed up as follows: 1. One who owns or keeps a vicious or dangerous dog, knowing it to be such, is bound, at his peril, to keep him safe from injuring innocent parties; 2. It is not necessary in all cases, in order to show the vicious or dangerous character of a dog, to prove that it had previously bitten or attacked someone, but other facts and circumstances may be considered; 3. Where the person attacked or bitten was without fault, the burden of proof is on the owner to show that the dog had always been of a gentle disposition, and had never attacked or bitten anyone, or given occasion to suspect that it would do so; 4. Where, however, it is shown that the dog had always been of a kind temper, gave no indication of viciousness, and did not appear to be dangerous, the owner is not to be held as being at fault from the mere fact that the dog was not confined. There is no liability unless there be some fault, but the least fault is sufficient.

"Applying the principles to the case at bar, we find that plaintiff's case has not been made out. There is no evidence in the record that defendant's dogs had ever bitten or attacked anyone previous to this occasion. The mere fact that they were bull dogs, or bull-terriers, about a year old, and fifteen inches or so in height, does not of itself and alone suffice to show that they were vicious or dangerous; at least there is no evidence that such is the case and we do not know it of ourselves. Nor do we feel justified in reaching that conclusion from the fact that the dogs once chased a goat, and at another time killed in a fight a strange dog which had intruded into what was practically defendant's own inclosure."

Judge Carver of the Second Circuit Court of Appeal, in Mercer v. Marston, 3 La. App. 97, reviews the jurisprudence and interprets article 2321 of the Civil Code as follows:

"* * * The first clause says, broadly:

"'The owner of an animal is answerable for the damage he has caused.'

"The next clause provides not an exception from the rule of responsibility, but a means of discharging it; that is, of satisfying it in case the animal had been lost or had strayed more than a day. In either of these cases the obligation is incurred, but the owner may discharge it by abandoning the animal to the injured party. Of course, if he does not choose to abandon it, he remains responsible for the full amount of the injury.

"The third clause provides that this privilege of discharge by abandonment shall not be enjoyed by an owner who has turned loose a dangerous or noxious animal.

"Evidently, though, the French authorities and our own Supreme Court regard the article as subject to the provisions of article 2315 as to fault and to those of article 2316 as to negligence or imprudence.

"Considering these articles together, it is clear that liability rests on two bases, namely:

"1. Injury by an animal; and

"2. Fault or negligence on the part of the owner.

"In the clause providing for responsibility, nothing is said of the character of the animal or the owner's knowledge thereof. To the party injured it makes no difference whether the animal is vicious or kind; or, if vicious, whether the owner knows it or not. So far, therefore, as responsibility rest on the basis of injury the animal's character and the owner's knowledge of it would seem to be immaterial. These can be material then only so far as they affect the question of the owner's fault or negligence. But for articles 2315 and 2316 it might be claimed that, under article 2321, this character and knowledge are wholly immaterial, the matter of character under article 2321 having no bearing on the case except to deprive the owner of the privilege of satisfying his responsibility by abandoning the animal where it is dangerous or noxious and has been turned loose by him.

"But in view of the Supreme Court's interpretation of article 2321 in connection with articles 2315 and 2316, the character and the owner's knowledge thereof are material so far as they help to determine the question of fault or negligence of the owner. * * *

"As to the character itself, supposing the owner to know it, it seems to us that if bad it is a matter of degree; the owner's fault being greater or less according as the character is more or less bad.

"It is to be observed, too, that the clause in article 2321 treating of character (besides doing so, as we have seen, only to declare it a ground for withdrawing the privilege of discharge by abandonment) speaks not of a vicious or ferocious animal but of dangerous or noxious animals. If an animal be dangerous or noxious, therefore, from whatever cause, it comes within the clause."

In Reneau v. Brown et al., 9 La. App. 375, 158 So. 406, Judge Janvier, as the organ of this court, said:

"Having determined that the injury was caused by the bite of a dog, the next question which presents itself is whether or not the previous character of the dog or dogs was such that the persons harboring them, should be held liable under the circumstances presented here.

"The fact that these dogs, or at least one or more of them, must have been considered vicious by those persons in charge of the premises, is shown, we think, by the treatment that these people accorded the dogs. They testified that they always kept the dogs in the rear of the premises, never let them go outside, and were always most careful not to let them come into contact with the public. These actions on their part indicate that they knew that the dogs were dangerous. * * *"

In Perez-Sandi v. Berges, 12 La. App. 191, 125 So. 185, 186, Judge Westerfield said:

"* * * In Reneau v. Brown et al., 9 La. App. 375, 158 So. 406, this court held that 'a person, whether the owner, or not, of a vicious dog, and whether the owner, or not, of the premises on which the dog is kept, may make himself liable to others by keeping or harboring such a dog, after obtaining knowledge of its vicious propensities.' See American & English Cyclopedia of Law (2d Ed.) vol. 2, p. 375.

"The second ground of defense relied upon by defendant is based upon the jurisprudence of this state and of other jurisdictions, reviewed by this court at length in the case of Gillespie v. Blaise, 3 La. App. 59, to the effect that 'the owner of a domestic animal is not, in general, liable for an injury committed by such animal, unless it be shown that he had notice of its vicious propensity.' * * *

"We have said that the jurisprudence of this state was to the effect that previous knowledge of the vicious tendency of an animal was necessary to hold its owner answerable in damages. This is our appreciation of the present state of the law in Louisiana, though the question was not originally free from doubt. * * *"

In Anderson v. D'Ingianni, 16 La. App. 560, 134 So. 412, the same author said: "Generally speaking, the bite and the ownership of the dog being conceded, there must be a showing of knowledge on the part of the defendant of the vicious propensity of the dog by reason of his having bitten other persons, or otherwise, before there can be any recovery. There is no difference of opinion between counsel in this case concerning the law applicable."

In the case of Peyronnin v. Riley, 15 La. App. 393, 132 So. 235, this court adopted the following language of Judge Hugh C. Cage:

"'The law of animals is thoroughly well settled in this state, and as far as I know, the jurisprudence of this state is consistent with that of the sister states which live under the common law system, and with England in which the common law system was derived. Writers of the jurisprudence divide animals into two classes, so far as the

question of consideration is concerned, namely: Animals ferae naturae and animals mansuetae naturae. The first class embraces all wild, undomesticated, animals, such as bears, lions, tigers, wolves, buffaloes, deer.

" 'The principle applied to animals ferae naturae is that they are inherently dangerous, and that any man who keeps or harbors an animal ferae naturae does so at his peril. When he undertakes to keep or harbor an animal ferae naturae he knows that he is dealing with an object or thing dangerous to humanity, and the jurisprudence is that he keeps him at his peril and if any one is harmed by animal ferae naturae, he who kept or harbored him must respond in damages.

" 'As to animals mansuetae naturae, that is, the class of domesticated animals, such as horses, sheep, goats, cows, bulls and dogs, they having been domesticated for untold centuries, are regarded as inherently nonoffensive, and not being of a risk to human beings, and every man has the right to keep and harbor animals mansuetae naturae, some of which I have mentioned; but, the law is that any one of those domesticated animals, those animals mansuetae naturae, is liable, whether it be a horse, cow, sheep, or other such animal, to become vicious, and when they become vicious they are recognized as dangerous to humanity and then, so far as the law is concerned, fall into the category pro hac vice of animals ferae naturae; and, then, a man who continues to keep or harbor, entirely irrespective of ownership, a domesticated animal which has by its previous history evinced the fact that it has become one of the vicious class, keeps him at his own peril.' "

In Johnson v. Butterworth, 180 La. 586, 157 So. 121, 128, recently decided by the Supreme Court of this state, Chief Justice O'Niell said:

"* * * In article 2321 of the Civil Code it is, unqualifiedly, declared: 'The owner of an animal is answerable for the damage he has caused.' But the courts have, consistently, construed this article as meaning that the owner of an animal is answerable for the damage he has caused, *only when the act of the animal that caused the damage is attributable to some fault or imprudence on the part of the owner of the animal.* * * *

"A reference to the collection of decisions on this subject in the editorial note to Vaughan v. Miller Brothers '101' Ranch Wild West Show [109 W. Va. 170, 153 S. E. 289], 69 A. L. R. 497 et seq., will disclose that, notwithstanding the unqualified terms in which article 2321 of the Civil Code declares that the owner of an animal is answerable for the damage he has caused, the rule of reason which the jurisprudence has established on the subject is exactly the same in Louisiana as at common law; that is, that there is no liability unless the owner of the animal was imprudent, or at fault."

See, also, Giraud v. Shally, 1 La. App. 336; Thatcher v. Simkin, 2 La. App. 113; Manuel et ux. v. Young, 10 La. App. 112, 119 So. 555; Gillespie v. Blaise, 3 La. App. 59; Hatcher v. Burlett et al., 11 La. App. 129, 119 So. 748; Fine v. Hiller (La. App.) 146 So. 50, 51; Young v. Blaum (La. App.) 146 So. 168.

The language of article 2321 of the Civil Code, supra, is plain and direct. The first clause says: "The owner of an animal is answerable for the damage he has caused."

The liability of the owner is fixed absolutely and without qualification. Two conditions only may relieve him of his responsibility: First, if the animal has been lost, and, second, if it has strayed more than a day,—in either case, by abandoning him to the person who has sustained the injury. This is not an exception to the owner's liability, but merely a means of discharging his responsibility, and this relief by abandonment does not apply where the master has turned loose a dangerous or noxious animal.

Article 2315 of the Civil Code is in sharp contrast with the provisions of article 2321. The first clause reads: "Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it."

Here there must be fault, and he whose act causes the damage may relieve himself by showing that he was without fault.

Article 2316 of the Civil Code reads: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."

In considering liability for the damage caused by an animal, it is necessary to consider all three of the foregoing articles of the Code, because it is plain, from the jurisprudence, that our courts have departed from the strict letter of article 2321 and construed these three articles together in cases of this character. This tendency was apparent even in the earlier cases, such as Montgomery v. Koester, supra, where the court, after citing the French authorities to the effect that the character of the animal and knowledge of its vicious propensities are immaterial in determining the liability of the owner, says: "We have no occasion in this case to deter-

mine whether we should follow them to that extent."

In Delisle v. Bourriague, supra, Justice Breaux, in discussing the doctrine of scienter, says that the owner is liable only where there is some *fault* on his part, thus applying the principle of article 2315 rather than that of article 2321.

In Martinez et al. v. Bernhard, supra, it was said: "The decisions of this court have always found that the owner was in some way at fault in cases in which damages were allowed."

In Bentz v. Page and Damonte v. Patton, supra, Judge Land held that it was presumed that the owner was at fault, but that he was permitted to rebut this presumption. This illustrates how far the jurisprudence has departed from the letter of article 2321. It is even more evident in those cases holding the harborer of an animal liable. Article 2321, Civ. Code, specifically applies to the owner of an animal. To hold the harborer liable, resort must be had to article 2315 or article 2316. In holding the harborer liable under these articles, negligence or fault must be shown on his part, and the theory no doubt was that, if fault or negligence must be shown on the part of a harborer, the same principles should apply to an owner, whose position should be no more onerous than that of a harborer, or, as said by Chief Justice O'Niell in Johnson v. Butterworth, supra, the rule of reason has been applied.

In Mercer v. Marston, supra, in discussing article 2321, the court said:

"Evidently, though, the French authorities and our own Supreme Court regard the article as subject to the provisions of article 2315 as to fault and to those of article 2316 as to negligence or imprudence.

"Considering these articles together, it is clear that liability rests on two bases, namely:

"1. Injury by an animal; and

"2. Fault or negligence on the part of the owner."

See, also, the rules laid down by Justice St. Paul in Ladrix v. DiMaggio, supra. And in Perez-Sandi v. Berges, supra, this court said: " * * * We have said that the jurisprudence of this state was to the effect that previous knowledge of the vicious tendency of an animal was necessary to hold its owner answerable in damages. This is our appreciation of the present state of the law in Louisiana, though the question was not originally free from doubt. * * * "

The doctrine of scienter, as a necessary element in establishing fault, being firmly fixed in our jurisprudence, it follows that any actions of, or vicious tendencies exhibited by, the animal posterior to the injury complained of, are immaterial. The fault contemplated or presumed to be in the owner or harborer of an animal, such as would render him liable, is that fault occasioned by his failure or neglect to take such measures as would have prevented the injury or damage complained of, or rendered it impossible.

The rule may be stated thus: "Notice of the animal's vicious propensity must be such *as to put the owner on his guard* and to require him as an ordinarily prudent person *to anticipate the injury* which has happened." (Italics ours.) 3 Corpus Juris, p. 96, § 327.

And in Reneau v. Brown, supra, this court said: "Having determined that the injury was caused by the bite of a dog, the next question which presents itself is whether or not the *previous* character of the dog or dogs was such that the persons harboring them, should be held liable under the circumstances presented here." (Italics ours.)

In the case of Peyronnin v. Riley, 15 La. App. 393, 132 So. 235, 236, this court said: "Now, as I say, when a domesticated animal suddenly and without previous warning of its vicious nature, commits injury, the owner or harborer of such an animal is not liable; but, if there be any occurrence, one or many, *in the past history* of the animal sufficient to place the owner or harborer of the animal on notice that it is vicious or dangerous, then he is liable for the animal's torts." (Italics ours.)

Consequently, in determining whether or not there was knowledge of the vicious or dangerous character of the dog, resort must be had to those instances where the viciousness or dangerous propensities were exhibited anterior to the date of the injury or damage complained of.

The injury complained of in the present case occurred on November 29, 1932. The record discloses the following occurrences prior to that date: In July of that year plaintiff was holding her Spitz dog in her arms and defendant's dog leaped upon her in an effort to get at the Spitz. Plaintiff alleges she was bitten on the arms, but plaintiff's witness, Lamantia, who saw the occurrence, says he did not see the dog bite plaintiff, and was under the impression that plaintiff was scratched. Lamantia chased the dog away with a piece of clothespole. Plaintiff, who

lived next door to defendant, was so little impressed by the occurrence that she did not take the trouble to notify the defendant of the incident, but that afternoon, happening to see defendant's negro yardman, Ike Mc-Craney, called him and showed him her arm and asked him to tell defendant to keep the dog at home.

Plaintiff's witness, Rahn, who delivered parcels at defendant's home from time to time prior to November 29, 1932, testified that on these occasions the dog attempted to get at him, and that he always called the servants present to take the dog away. He was never bitten, scratched, or injured, and he never notified defendant that the dog was vicious.

Plaintiff's witness, Leonard Reed, testified that while delivering milk at plaintiff's residence a large dog ran at him through the hedge, but did not catch him. He did not identify the dog other than stating that it ran through the hedge.

Mrs. H. C. Thomas, another of plaintiff's witnesses, heard her five year old child call to her, and, upon reaching the rear of her house, found the child coming up the back steps. She says she found one of the child's shoes in the yard with the imprint of the dog's teeth in it. She did not see the dog pull the child's shoe off, or know how it came off. The child was in no way injured or bitten.

As stated by the court in Ladrix v. Di-Maggio, supra; "It is not necessary in all cases, in order to show the vicious or dangerous character of a dog, to prove that it had previously bitten or attacked someone, but other facts and circumstances may be considered."

This was the principle applied in Montgomery v. Koester, and McGuire v. Ringrose, supra, where the dogs were dangerous and vicious, known to be so by the owners, and kept as watchdogs because of these qualities. In such circumstances there is actual knowledge, and the owner or harborer of such animals keeps them at his peril. While this principle is sound in law and reason, the reverse is also true, and the mere fact that a dog has previously bitten some one does not necessarily mean that it is of a vicious or dangerous character. Sudden pain or fright sometimes causes a dog to snap involuntarily, and in each particular case the circumstances must be considered and the question addressed to the sound discretion of the court.

Defendant's dog was a young female police dog, past the puppy stage, but not yet matured. None of the foregoing incidents which occurred prior to November 29, 1932, could reasonably be said to stamp the animal as one of a dangerous or vicious nature. But assuming, arguendo, that these occurrences, taken together, tend to establish viciousness, it certainly cannot be said that they were of such moment as to charge the owner with knowledge. The principal occurrence involved the plaintiff herself in July, prior to the injury complained of. Yet she did not take the trouble to notify defendant, although living next door. There is not a line of testimony to the effect that any one, at any time, ever told the defendant that his dog was of a dangerous or vicious nature. All of plaintiff's witnesses who came in contact with the dog before and after the injury complained of, if they gave any notice at all, testified that they notified Ike McCraney, defendant's negro yardman. Ike McCraney died, and, consequently, could not give his testimony. He was one of defendant's yardmen, and had been in his employ for a number of years. He had various duties to perform, and did not have charge of the dog, which he occasionally looked after only incidentally. Other servants also looked after the dog's wants, and it was permitted to roam around at will. McCraney was never delegated the duty of taking care of the dog. Plaintiff contends that the knowledge of Ike McCraney is chargeable to defendant. We do not believe that these incidents prior to the injury complained of ever awakened the thought in this negro's mind that the dog was dangerous or vicious. But again assuming, arguendo, that they did, this knowledge is not imputable to defendant.

The general rule may be stated thus: "Knowledge of Servant or Agent. Knowledge of a servant or agent of an animal's vicious propensities will be imputed to the master when such servant or agent has charge or control of the animal, and this is true, although the servant acquired his knowledge after starting on a journey with the animal. But the knowledge of a servant who has no control of the owner's business, or is not charged with the duty of keeping the animal, is not imputable to the owner. And in any case the imputation will not be made in the absence of proof establishing the knowledge of the agent or servant." 3 Corpus Juris, p. 96, § 328. In Twigg v. Ryland, 62 Md. 380, 50 Am. Rep. 226, the court said: "It is very true, as shown by the authorities, that if the owner of a dog place it in the charge and keeping of a servant, the servant's knowledge of the

dog's ferocious disposition is the knowledge of the master. But it is not true, that the knowledge of any servant that a dog may follow, or be with about the premises where he is employed, as to the disposition of the dog, is to be imputed to the master. This is clear upon all the authorities."

In Shaver v. N. Y. & Lake Champlain Trans. Co., 31 Hun (N. Y.) 55, the court said: "It would certainly be unreasonable to charge the owner of an animal with whatever knowledge of its viciousness any person might have who was charged with the least duty whatever in respect to it. That principle, if adopted, would charge an owner with the knowledge which might be possessed by a boy who might be, in a single instance, employed to lead an animal to water. In the present case the hostler had merely the duty (so far as appears) of feeding this mule, among many others, when it chanced to be in the stable. He was not appointed to 'the duty of having the mule under his inspection.' "

In Friedmann v. McGowan, 1 Pennewill (Del.) 436, 42 A. 723, 725, the court said: " * * * The mere fact that a dog accompanies or is in the possession of a servant, and that the servant has knowledge of the dog's viciousness, is not in itself evidence of knowledge on the part of the owner. The knowledge of the servant is not knowledge on the part of the master, unless the servant was made the agent of the master for the particular purpose of taking charge of the dog."

In Serio v. American Brewing Co., 141 La. 290, 74 So. 998, L. R. A. 1917E, 516, the facts differed from those in the present case; the defendant corporation being held liable for the acts of its agent, the agent being the alter ego of the corporation. The present case falls within the rule above recited, and defendant cannot be charged with the knowledge of his yardman, Ike McCraney, who, even if the facts justified condemning the dog as vicious or dangerous prior to the injury, was not delegated to take care of the animal or in any way in charge of her, and only occasionally and incidentally attended to it.

Now, as has been shown, the courts of this state have departed from the strict letter of article 2321 of the Civil Code, and construed this article together with articles 2315 and 2316, and held that fault or negligence is necessary before the owner or harborer of a dog can be held liable for the damage it has caused. There are decisions holding that this fault is presumed to be in the owner or harborer and that the burden is on him to rebut

it. We are unable to see the logic of this rule, as there are no other classes of cases falling under article 2315 or article 2316, where the fault, negligence, or imprudence is presumed. In all other cases the burden is on the plaintiff to prove this by a preponderance of evidence. This rule could be applied more properly in the case of animals feræ naturæ, or even in those cases where animals mansuetæ naturæ have by their conduct placed themselves in the former class. We believe the rule is intended to apply where the owner or harborer had knowledge of the vicious character of the animal; the burden then being upon him to show that he was without fault. However, applying the rule to the present case, defendant has amply rebutted any presumption of fault on his part. While we have weighed the witnesses rather than counted them, defendant produced nineteen witnesses, all of whom knew the dog and testified as to its gentleness.

Plaintiff lays great stress on the alleged attack upon herself in July, nearly five months before the injury complained of. A similar situation obtained in the case of Peyronnin v. Riley, supra. That case was based upon a prior attack upon the plaintiff's minor child. This court, in adopting the language of the court below, said: " * * * and Mr. Riley, the defendant in this case, swears that he never heard of the occurrence until after the biting of Mrs. Peyronnin, on which this suit is based, and which took place more than a year thereafter. Now, if this occurrence, of which Mr. Riley swears he never heard, and of which Mrs. Peyronnin must have known as she alleges it in her petition, made no impression upon the minds of Mr. and Mrs. Peyronnin that this dog was vicious and should have been done away with at that time, it could have made no such impression upon the mind of Mr. Riley who swears that he never heard of it; and, again, if that occurrence was sufficient to evidence a vicious, ferocious and dangerous nature in that dog *it was the height of imprudence and negligence* upon the part of Mr. Peyronnin, *and of this plaintiff, living next door* in a house *without any fence* in front *not to have declared their knowledge of the viciousness* of the dog *and have demanded of their neighbor next door*, next door neighbor, *that the dog be done away with.*" (Italics ours.)

For the reasons assigned, it is hereby ordered, adjudged, and decreed that the verdict of the jury and the judgment of the court based thereon and herein appealed from be,

and the same are hereby, annulled, avoided, and reversed, and plaintiff's demand is hereby rejected and her suit dismissed at her cost.

Reversed.